### SMART MAXWELL V. R. R. URBAN.

Decided February 23, 1900.

**1. Lease—Negotiability—Assignment of.**

A lease of land for five years, the rental payable annually, but no note or notes being given for the rental, is not a negotiable instrument, but it may be assigned, and thereafter the lessee can do no act which would affect the assignee's rights, but may avail himself of any equity existing between himself and the lessor at the date of the assignment.

**2. Same—Lease by Life Tenant Terminates at His Death—Assignee Not Protected.**

Where one having a homestead right in land the property of his minor child, of whose estate he is not guardian, leases out the land for a term of five years and dies before expiration of the term, his assignment of the last year's rental to another is unavailing, and the lessee is protected in paying such rental to the guardian of the minor, though he had notice of the assignment.

**3. Same—Lessee Not Estopped.**

Where the assignee of the last year's rental under the lease, before taking the assignment thereof, asked the lessee if it would be "all right," and he replied that "he always paid his debts when due, and would pay this one, if he lived," this did not estop him from pleading against the assignee's claim for such rental his liability and his payment of the rental to the guardian of the minor.

APPEAL from the County Court of Waller. Tried below before Hon. R. E. HANNAY.

*Tompkins & McDade,* for appellants.

*H. M. Browne,* for appellee.

GILL, ASSOCIATE JUSTICE.—In 1893 Clarence Gordy was occupying a tract of land as his home. The land belonged to his minor daughter, Annie, who resided with him. Though the natural guardian of her person, he was not the guardian of her estate, and the record does not disclose that at that time any such guardianship existed. On the 15th day of December, 1893, Clarence Gordy, by written instrument, leased this land to the appellant for a term of five years at a yearly rental of $125 per year, payable on the first day of December of each year to Clarence Gordy or his order. The lease recited that Clarence Gordy was at that time the owner and was in possession of the premises, and contained the usual stipulations as to occupancy, repairs, etc., and that the place

should be returned to the lessor at the end of the time in good repair, etc. This writing was executed in duplicate, each party retaining a copy, and Maxwell thereupon went into possession.

On December 1, 1894, Clarence Gordy, by a written instrument and for a valuable consideration, assigned to P. B. Thornton the year's rent due under the terms of the lease for the year 1898. Prior to 1898, and for a valuable consideration, Thornton assigned this instrument to the appellee, R. R. Urban, and upon this last named instrument this suit was based. Upon trial on appeal to the County Court, judgment was rendered in favor of appellee.

The instrument by which the 1898 rent was assigned, recited that the tract of land belonged to Annie Gordy, referred to the lease, and also transferred the landlord's lien on the crops of 1898 to secure the payment of the rent for that year. Clarence Gordy died in the summer of 1895, whereupon A. C. Thompkins, who was appointed guardian of the estate of the minor, collected the rent from Maxwell for the years 1896, 1897, and 1898.

Prior to his death Clarence Gordy assigned the original lease to T. D. Pinkney, who collected for 1894. The bank collected for 1895 under an assignment from Pinkney, and upon the death of Clarence Gordy, surrendered the lease to the guardian of the minor.

Clarence Gordy's right to the use of the land necessarily ended at his death, and it is conceded that he could not have leased for a longer time and thereby bound the owner of the fee. In such case the rent would thereafter be properly payable to the guardian of the minor. Hearne v. Lewis, 78 Texas, 276; Porter v. Sweeney, 61 Texas, 213; Schultz v. Sprein, 1 White & W. C. C., secs. 917-919; 9 Am. and Eng. Enc. of Law, 115.

This being true, the question presented is, was there anything in the nature of the lease and the circumstances attending the transfer of the rent for 1898 which would entitle the assignee to collect from Maxwell, notwithstanding the fact that the legal representative of Clarence Gordy, deceased, could not have enforced it against Maxwell?

It will be noted that the instrument was entire. No note or separate promise was executed by Maxwell evidencing his promise to pay each year's rent when due. The promise to pay as evidenced by the lease was involved in mutual covenants usual in such instruments. This being true, the contention that the lease was a negotiable instrument is utterly untenable. It was assignable, however, and after notice to Maxwell of such assignment he himself could do no act which would affect the assignee's rights. Such notice was in fact conveyed to him. He, however, could avail himself of any equity existing between him and the lessor at the date of the assignment of Thornton.

It is equally true that the assignees were chargeable with notice of the contents of the lease upon which the promise to pay was based, and of the covenants therein, either expressed or implied. One covenant always implied in a lease, unless inconsistent with its terms, is that of quiet

enjoyment and that the lessor has the right to lease for the term expressed. 9 Am. and Eng. Enc. of Law, 964; 12 Id., 1011, and authorities cited; 1 Wood, Landl. and Ten., 693.

Not only were the assignees chargeable with notice of this implied covenant, but they had actual notice by the recitals in the assignment that the property belonged to Annie Gordy and not to the lessor.

The instrument itself bore evidence that the rent for 1898 would not be payable unless earned by a compliance with this covenant, and the assignee is certainly in no better position than the lessor and bought no more than the lessor could convey. This covenant was breached upon the death of Clarence Gordy, and Maxwell rightly yielded to the superior right of the guardian of Annie Gordy, and paid the rent thereafter to him. It follows, therefore, that appellant could urge such breach in bar of appellee's action, and the consideration having wholly failed for that year, the judgment against appellant was erroneous. 12 Am. and Eng. Enc. of Law, 1020.

But appellee contends that appellant is estopped to urge that defense in bar of his action, both by the terms of the instrument and for the further reason that during the lifetime of the lessor and before the purchase by appellee from Thornton, he notified appellant of his intention to purchase, and asked him if it would be "all right," and appellant replied that, "he always paid his debts when due, and would pay this one, if he lived."

He is not estopped by the terms of the lease, for the reasons given above, and we do not think his reply to appellee's inquiry can be held to be a waiver of any right he might have had under the lease. It certainly was not an absolute promise to pay, independent of the terms of the lease, and appellee was then chargeable with notice of every fact and circumstance which appellant might have apprised him of as in any way affecting his rights. He is not sued upon a promise to pay notwithstanding the lease, but on account of the lease, and the rights of the parties should be measured by its terms and the rules of law applicable to the assignments of instruments of that nature.

The judgment of the court below is reversed and judgment is here rendered for appellant.

*Reversed and rendered.*