## CHARLESTON

KILCOYNE v. SOUTHERN OIL CO. *et al.*

Submitted February 5, 1907.    Decided March 12, 1907.

1. MINES AND MINERALS—*Lease—Covenants.*

There is an implied covenant for good title and peaceable and quiet possession in a lease for years for oil and gas. (p. 539.)

2.   SAME—*Construction.*

   Such implied covenant of warranty is not limited to the right of
   exploration for oil and gas, but when produced the right to the
   amount stipulated for in the lease is likewise thereby protected.
   (p. 539.)

(POFFENBARGER, JUDGE, Absent.)

Appeal from Circuit Court, Wetzel County.

Bill by S. J. Kilcoyne against the Southern Oil Company
and others.   Decree for plaintiff, and defendants appeal.

*Reversed.   Bill Dismissed.*

HALL & HALL, GEO. L. ROBERTS and CHAS. N. KIMBALL,
for appellants.

THOS. P. JACOBS, for appellee.

SANDERS, PRESIDENT:

The defendant, S. B. McDougal, being the owner of six-
teen and one-fourth acres of land, lying in Wetzel county, on
the 24th day of August, 1899, conveyed to T. J. Conaway
one-sixteenth of all the oil and gas within and underlying the
same.   On the 26th day of January, 1903, McDougal leased
this same tract of land to C. L. Johnson, for the sole and
only purpose of mining and operating the same for the pro-
duction of oil and gas thereon for the period of five years,
and as much longer as oil and gas, or either of them, should
be produced therefrom, and in consideration thereof the
lessee covenanted and agreed to deliver, in case of productive
operation, to the lessor, his heirs or assigns, free of cost in
pipe lines, to his credit, the equal one-eighth part of all the
oil produced and saved from the leased premises, and three
hundred dollars per year for the gas from each well drilled
thereon.   On the 26th day of September, 1904, McDougal
granted unto H. M. Sartelle one-sixteenth of all the oil with-
in and underlying said tract of land, and one-half of all gas
royalties that might be paid thereon or arise therefrom, and
thereafter, on the 16th day of May, 1905, McDougal granted
to the plaintiff, Kilcoyne, with covenants of special warranty,
all his right, title and interest in and to the oil and gas in
and underlying the said tract of land.   The lease executed
by McDougal was assigned to the defendant, the Southern
Oil Company, and it proceeded with operations thereunder,

and on or about the 22nd day of November, 1904, produced oil in paying quantities.

The plaintiff, Kilcoyne, after obtaining the conveyance from McDougal, on the 16th day of May, 1905, filed his bill in equity in the circuit court of Wetzel county, setting up the various conveyances and the lease aforesaid, and alleging that by reason of his purchase and deed from McDougal, he had acquired an interest in the oil and gas, and claimed to be entitled to the full one-sixteenth of the oil produced, and one-half of the gas royalties, which he averred had not been conveyed under the previous conveyances.

The defendant, Southern Oil Company, demurred and answered, and the cause proceeded to final decree, wherein it was determined that H. M. Sartelle or his assignees were entitled to eight one hundred and twenty-eighths of the oil, the plaintiff to seven one hundred and twenty-eighths thereof, and the Southern Oil Company to the remainder, subject to the rights of T. J. Conoway, which were not adjudicated, the decree providing further that Kilcoyne is entitled to one hundred and forty dollars and seventy-five cents, part of the three hundred dollars royalty from each and every gas well, the product of which may be used or marketed off of the premises; and from this decree the Southern Oil Company has appealed.

The plaintiff claims that Conaway, under and by virtue of his conveyance from McDougal, obtained one-sixteenth of the oil and gas in place, which was before there was any lease whatever on the land, and that Johnson, the lessee, took his lease with record notice of the conveyance of the one-sixteenth to Conaway, and having this notice, stipulated and agreed to pay to the lessor, his heirs or assigns, the equal one-eighth of all the oil produced and saved, and that therefore the Southern Oil Company is liable to and must account for three-sixteenths of the oil produced and saved, taking thirteen-sixteenths as the working interest, with the possible right to deduct from Conaway's interest the *pro rata* share of the costs of its production.

The conveyance from McDougal to Conaway passed to him a one-sixteenth of the oil and gas, whether in place or royalty is immaterial in the determination of this cause, which was not affected in any way by any of the subsequent

conveyances or lease. This interest in the property having been parted with, and vested in Conaway, McDougal leased the entire tract of land to Johnson, for the purpose of operating and producing oil and gas, reserving the prevailing one-eighth royalty, thereby passing to the lessee the seven-eighths working interest. Now, since the making of this lease to Johnson, as McDougal thereafter conveyed a one-sixteenth interest to Sartelle, and later conveyed his entire remaining interest to the plaintiff, the question arises what interest in the property did McDougal have at the time of the last conveyance. He parted with the one-sixteenth to Sartelle, and in the lease reserved the usual one-eighth royalty, and if we say, as we have said, that the lease passed the seven-eighths working interest in this property to the lessee, then there was only another one-sixteenth, which the lessor had, by previous conveyance, passed to Conaway. It is not a question here as to who shall pay Conaway. His interest is not in any way affected by the subsequent conveyances and lease, but the question is, should the lessee, after acquiring the seven-eighths working interest, under the lease, be required to pay more than the amount stipulated for in the lease, and if not, then what should it pay, and to whom should it pay it? Certainly Sartelle is entitled to the interest conveyed to him by McDougal, because at this time the latter had such interest, and by his deed passed it, but having passed this interest, his estate in the property was entirely divested, and therefore his deed to the plaintiff passed nothing.

What we, have said is based upon the theory that a lease for years implies a warranty of good title and peaceable and quiet possession of the leased premises. This is not an open question in this state. It has been held in *Knotts et al.* v. *McGregor*, 47 W. Va. 566, 35 S. E. 899, and recently in the case of *Headley* v. *Hoopengarner*, 60 W. Va. 26, 55 S. E. 744. These cases cite abundant authority to sustain the position, and it seems entirely unnecessary to cite further authority or to make further comment upon the subject. We accept it as the settled law of this state, and we feel we can safely say there is no respectable authority holding the contrary view. My search has unquestionably led me to this conclusion.

It is contended, however, that no oil was conveyed to the lessee, but only the right to search, with covenant of quiet enjoyment for search; that this, the lessee got, and has never been molested or disturbed, and that there has been no breach of the covenant for quiet enjoyment; and that while there is a grant to search, and the lessee may impliedly take the oil after paying royalty, yet there is no grant of it and no warranty. It is true that under the decisions of this Court the ordinary oil and gas lease, giving the lessee, for a term of years, the right to mine and operate for oil and gas is not a sale of the oil and gas in place, and the lessee has no vested estate therein until produced, but when found the right to produce becomes a vested right, and when extracted, the title vests in the lessee, and the consideration or royalty paid for the privilege of search or production is rent for the leased premises. While this is so, it will not do to say that the covenant of warranty in the lease is limited to the right to search, and that when oil is once found, the right to produce is not likewise protected by the warranty. In other words, we must look to the real purpose and intent of this lease. What was its object—what was passed by it? The right to search and the right to produce when found. And if the right to produce when found is warranted, it must be to produce the entire amount stipulated for in the lease, and wherever the lessee's right to so produce is defeated there is a breach of the covenant of warranty, and the lessor is liable. True it is that by Conaway's deed a certain interest had already been conveyed, and that the lessee had constructive notice thereof. Still the lessor leased the entire property, reserving the prevailing royalty, which effectually passed the seven-eighths working interest, when produced, to the lessee. A proper construction will not require the lessee to pay the one-sixteenth interest to Conaway, and then to pay a full one-eighth royalty to McDougal, but only the difference between what had been conveyed to Conaway, and the royalty stipulated for in the lease, will be required to be paid.

The case of *Harris* v. *Cobb*, 49 W. Va. 350, is relied upon as authority to support the position of the appellee. The decision in this case was by two judges, and seems to be predicated upon the theory that there is no implied covenant of warranty for good title and peaceable possession in a lease.

JUDGE BRANNON dissented, holding that there is such implied covenant of warranty in a lease, which had been previously held in *Knotts* v. *McGregor*, *supra*, and which we have since held in *Headley* v. *Hoopengarner*, *supra*.

The decree of the circuit court is reversed, the demurrer sustained, and the bill dismissed.

<div align="right">

*Reversed.   Bill Dismissed.*