GEORGE COHEN et al., Appellees, v. PERLE L. HAYDEN, Appellant.

PRINCIPAL AND AGENT: Liability of Agent—Liability on Contract. Liability of agents on contracts entered into by them, discussed generally.

EXECUTORS AND ADMINISTRATORS: Real Property—Leases—Personal Liability. An executor or administrator who enters into a lease without authority from the court or under the will, is personally liable thereon. So held where a tenant in common, who was in possession of the property under a will, and who was also executor, leased the property without authority from the court or in the will. Sec. 3333, Code, 1897.

**LANDLORD AND TENANT:** Quiet Enjoyment Covenant—Breach
—Defense—Pending Partition. It is no defense to an action for breach of an implied covenant in a lease for quiet enjoyment that the lessee knew when the lessor executed the lease that an action for the partition of the property was then pending.

**LANDLORD AND TENANT:** Leases—Construction—Covenant for Quiet Enjoyment. A covenant for quiet enjoyment, even in the absence of the word "devise," etc,. is implied in every mutual contract of leasing.

**INTEREST:** Unliquidated Demands—When Allowable. Whether interest is allowable on an unliquidated demand depends largely (a) upon the nature of the liability and (b) upon the defendant's duty in the premises. *Held*, in an action for damages for breach of an implied covenant for quiet enjoyment, that the lessee was entitled to interest on the damages from the time they accrued.

**APPEAL AND ERROR:** Assignment of Error—Sufficiency. Errors not presented by "brief of points relied on for reversal," as required by Rule 53 of the rules governing the presentation of appeals, will be disregarded.

**LANDLORD AND TENANT:** Leases—Construction—Covenant for Quiet Enjoyment.

*Appeal from Des Moines District Court.*—OSCAR HALE, Judge.

WEDNESDAY, APRIL 10, 1916.

SUPPLEMENTAL OPINION TUESDAY, JUNE 19, 1917.

ACTION to recover damages alleged to have been sustained by reason of being wrongfully evicted from leased premises. Judgment for plaintiffs, in the court below. Defendant appeals.—*Affirmed.*

*Blake & Wilson,* for appellant.

*Power & Power* and *Charles Willner,* for appellees.

GAYNOR, C. J.—On the 4th day of September, 1913, the plaintiffs filed a petition in the district court in and for Des

Moines County, alleging: That, prior to February 6, 1913, they were engaged in the retail furniture business in Burlington, Iowa; that they were occupying and carrying on their business in a place leased for a term of years; that, on the 6th day of February, they entered into a written contract of lease with the defendant, by the terms of which she undertook to and did lease to the plaintiffs certain premises on Jefferson Street in the city of Burlington, for the term of three years, at an agreed rental of $80 per month, to be paid in advance on the first day of each and every month; that plaintiffs entered into possession and paid the rent, as required by the lease, until the 17th day of April, 1913; that the leased premises were subsequently sold by referee in a certain partition proceeding; and that, thereafter, the purchaser instituted proceedings of forcible entry and detainer against these plaintiffs, and they were removed from and dispossessed of said premises under a warrant issued in said proceedings. Plaintiffs further allege that they expended large sums of money preparing the leased premises for the business and in advertising their new location; that, by reason of the ejectment, such expenditures were a total loss; that, subsequent to the making of the lease, they purchased a large quantity of new goods to be placed in said building; that they expended large sums of money in moving to and from the building; that, in moving, the stock was greatly damaged; that the actual rental value of such premises was $125 a month for the term of the lease; that they have been damaged in the difference between the amount they agreed to pay and the actual value of the premises. Plaintiffs claim other damages, which it is not material to set out.

Defendant, for answer, admits the execution of the lease, but alleges that, at the time the lease was made, the plaintiffs had both actual and constructive notice that partition proceedings were pending with reference to the

property; that they entered into the lease with full knowledge that, under these partition proceedings, they might be expelled and ousted from the premises, and they assumed such risk; alleges that the defendant had nothing to do with ousting the plaintiffs, but alleges the fact to be that the lease was mutually cancelled by the parties and had become of no effect prior to plaintiffs' entering upon said premises, and she denies all personal liability under the contract; alleges that the property rented belonged to the estate of Susan Hayden, deceased; that this defendant was one of the executors of her will; that the plaintiffs negotiated the lease with her as executor, and not with her as an individual; that the plaintiffs knew that the property was not her individual property, and knew that she executed the lease simply as executrix; that the lease was written "Perle L. Hayden, Ex.," and so signed, and was and is the contract of the estate, and not of this defendant as an individual. Defendant further says that there were five heirs to said estate, all adults; that one of the heirs resided with this defendant, and was not able, because of physical conditions, to transact business; that the other heirs were nonresidents of the state; that this defendant, as such executrix, transacted all the business connected with the real estate of her deceased mother; that, as such executrix, she executed leases upon the real estate; received rent and profits from all the real estate, including the real estate described in the lease, and was the only heir or devisee present and competent in the city of Burlington to take possession of said real estate; that, at the time the lease was executed, the plaintiffs well knew and understood that she was acting as executrix in making the lease. Defendant further alleges that she notified plaintiffs, before they entered into possession, that the lease was of no validity; that, when the plaintiffs tendered her the first month's rent, she declined the same for the reason aforesaid, and refused

to accept it; that the plaintiffs, after being so notified, and before the first of March, moved into said premises; that $80 was afterwards paid to the plaintiff, after a full discussion of the situation, and was made subject to the partition sale; that the $80 was not accepted under the written lease, but as rental for the month during which plaintiffs occupied the premises; that, after the payment of said $80, and about the 1st of April, plaintiffs sent this defendant another check for $80; that, after the partition suit was determined, and the property sold, the defendant returned $32 of the $80 to the plaintiffs, as the unearned portion of said April rent, and this was received and retained by the plaintiffs; that the plaintiffs have neither paid nor offered to pay any further rent. Defendant denies all items of damages claimed by the plaintiffs, and asks that the plaintiffs' petition be dismissed.

The plaintiffs, for reply, admit that they had notice of the partition proceedings pending in the district court, but aver that they were orally assured by the defendant that said proceedings were merely formal, and for the purpose of ascertaining and fixing the value of the real estate, and that she and the other joint owners, her brothers and sisters, would purchase said premises at the partition sale, and that said partition would in no manner interfere with the lease, or with plaintiffs' peaceable possession of the property under and by virtue of the lease. Plaintiffs further allege that the defendant was one of the devisees under the terms and provisions of the will of Susan Hayden, and as such, was competent to take possession of the real estate; that she was also trustee for one of her sisters, to whom one fifth of the estate was devised, including the property in controversy. Plaintiffs deny that they had knowledge that, under said partition proceeding, they might be expelled or ousted, and aver that they were told

and assured by the defendant that they would be protected in the peaceable possession of the premises.

Upon the issues thus tendered, the cause was tried to a jury and a verdict returned for the plaintiff. Upon this verdict, judgment was entered, and defendant appeals, and assigns error. Under "Brief of Points Relied on for Reversal," the defendant says:

"First. A lease may be mutually surrendered by the action of the parties.

"Second. Oral testimony is admissible to show the facts as they occurred at the time of the signing of the lease.

"Third. Where a party is acting in a representative capacity, and all the facts as to the capacity are known, he will not be bound personally.

"Fourth. An executor or administrator, in the absence of other heirs, has the right to rent and lease, and, having such authority, cannot be held personally liable.

"Fifth. A warranty will not be implied in a deed or a lease unless some words of warranty are made use of, particularly if all the facts are in the contemplation of the parties at the time, in which event it is subject to outstanding equities.

"Sixth. Interest should not be allowed on an unliquidated demand."

As to the first point under brief of points relied upon for reversal, we have to say that the question as to whether there was a mutual surrender of the lease by the parties was a question of fact, and was fully and properly submitted to the jury, and, as there is a dispute in the evidence, we will not review their finding.

As to the second proposition, all the testimony was admitted that was offered, showing, or tending to show, all that was said and all that occurred at the time of the signing of the lease, and all facts touching the knowledge

of either party concerning the pending partition proceedings and defendant's authority to act.

As to the third and fourth propositions,

**1. PRINCIPAL AND AGENT: liability of agent: liability on contract.** we find the authorities against defendant's contention as applied to the facts of this case. On these propositions, we have to say, generally, 'that, where one acts in a representative capacity as the agent of another, and there is another who may be bound by his act, and this fact is known to the party with whom the dealing is had, the agent does not personally bind himself by a contract so entered into. The rule is that an agent is not bound by contracts made by him as agent in his representative capacity, where he has authority to bind another by his act and the fact of his agency is disclosed. There, the parties both have knowledge that one is acting for another, who is to be personally bound by his act, and he becomes only the instrumentality through which the contract is made with his principal. This implies authority to act for another, and it is bottomed on the thought that he is acting for another, and has authority to bind another by his act. But if one assumes to act for another and has no authority to so act, and no power to bind the other by his act, his assumed authority does not release him from the obligation of the contract made by him. Or, in other words, if one assuming to be an agent and to be acting for another has no authority to act for the other, or to bind him by his acts, he will be held to have acted for himself, and be bound by the contract entered into. This is the rule, broadly stated.

There are well recognized exceptions to this general rule. These exceptions are set out and exemplified in *Thilmany v. Iowa Paper Bag Co.,* 108 Iowa 357, and require no further exemplification at our hands.

2. EXECUTORS AND
ADMINISTRAT-
ORS: real prop-
erty: leases:
personal liabil-
ity.

In all cases in which it is held that an agent, acting as such, having a principal who may be bound by his act, and having authority to act for a principal and bind him, does not bind himself, there is a principal to be bound by his acts, or one who is bound by his acts. See *Lacy v. Dubuque Lumber Co.,* 43 Iowa 510.

These general rules touching agency and the liability or non-liability of an agent are not controlling in a case such as we have here presented. Agency implies that there is a principal for whom the party is an agent. In the instant case, the property was the property of Susan Hayden at the time of her death. She left five children, and a will, in which she bequeathed her property in equal shares to her five children. Defendant was one of the children. The real estate in controversy passed under the will to these children in equal shares. Defendant had an undivided one-fifth interest in this property at the time the lease was made; was a tenant in common with the other heirs; was trustee for one of the heirs. Prior to the making of this lease, she had taken possession of this property and rented it and collected the rents, and, we must presume, accounted to the proper parties for the rental collected. She was one of the devisees of the will present and able to take possession, and had a right to the possession and control of the property as tenant in common with the other devisees. As executrix, therefore, she had no authority to take possession of this real estate, or to collect the rents and profits. Section 3333 of the Code, 1897, provides:

"If there is no heir or devisee present and competent to take possession of the real estate left by the decedent, the executor or administrator may do so, and demand and receive the rents and profits, and do all other acts relating

thereto which may be for the benefit of the persons entitled to the same."

The defendant in this case was a part owner of the property, a tenant in common with the other heirs; was in possession of and controlled all the property, presumably with the consent of the other devisees; had rented it prior to the making of this lease, and collected the rents and profits. However, that she assumed to act for the estate does not add to or take from her authority. It is not claimed that, in any controversy she had with the plaintiffs prior to the time of the making of the lease, she claimed or said to them that she was acting as executrix of the estate. Nor does it appear affirmatively from the record that she was acting as executrix of the estate at this time, except as it may be inferred from the fact that she attached the word "Ex." to her name in signing the lease, and to her name as it appears in the granting clause. She testifies: "I collected the rents. I rented the buildings. I executed leases when we needed them"—all prior to the time when the lease in controversy was made by her. She further testifies that, when she heard that Cohen would rent the property, she went to him and talked about fixing up a lease. She said: "There is a partition sale of the building. Do you know that?" They both appeared to know this. She said:

" 'Well, I have to write to my brother and find out about making the lease. He is the other executor.' Then I said: 'You had better wait until after the partition sale, and then you can move in. I would prefer to make the lease afterwards.' They didn't want to wait. I said, 'I will make a two years' lease with you.' They said it might just as well be three. I said, 'I will write to my brother and find out about it.' "

She testifies further that, upon the suggestion of the party, she telegraphed her brother; that her brother an-

swered, directing her to make the lease; that the partition suit was discussed at the time the lease was made; that, after she got word from her brother, she made out a couple of leases and took them down and had them signed. She said: "After I heard from my brother and he was satisfied, the lease was prepared."

Plaintiff testified that, at the time the lease was made, and at the time the partition sale was discussed, defendant told him that the devisees would not let the building go from them; that they would buy it in. Defendant testified that she said to him that they would try to keep the building in the family. In subsequent conversations, she said, when the question was discussed:

"I said I didn't think that the Hayden heirs would let that building go out of the family. I didn't think that there would be anyone to bid against us."

She further testified:

"At one time, I told him that I thought there would not be any individuals who would want the building, because they would want to buy a new building, with modern improvements, if they had the amount of money necessary to buy the building. After the lease was executed, we discussed the lease. I told them it wasn't good. He always seemed to think it was all right."

She further testified:

"At the time the lease was made, I told Cohen I didn't think the Hayden heirs would let the building go out of the family; that I wanted it kept in the family, and that the rest of them wanted it—every one of them."

In *Peoria Steam Marble Works v. Hickey,* 110 Iowa 276, it was said:

"An executor or administrator cannot, in the absence of authority given by the will of the decedent, or by statute, make an executory contract binding on the estate he represents. If he assumes to make such contract on a new and

independent consideration, it is his personal obligation, and he will be bound thereby, although the debt was incurred for the benefit of the estate (citing authorities). Another general rule is that, when an agent contracts without authority, or assumes to have authority when he has none, or for any reason fails to bind his principal, he is himself bound."

Referring to *Winter v. Hite,* 3 Iowa 142, the court proceeds to say:

"It is there said that contracts with executors, etc., should not be confounded with those entered into by agents. The plain reason for this distinction is that there is no principal to be found. A trustee, guardian or executor is not the agent or hand of the court concerning those contracts that he has no authority to make, but acts on his own responsibility, and is individually liable to perform them. * * * If it is not the contract of the individual, it is no contract."

In *Winter v. Hite,* supra, it is said:

"If it does not appear upon the paper that he acted as agent, or if he had not authority, he renders himself personally liable. * * * An executor, administrator, or guardian is not an agent in any such sense as above indicated. He is so in a general sense, it is true, but his virtual and real character is of another class. With him, it is not a mere question of fact whether he have authority, for there is no one to give it, but it is a question of law, and the law denies the authority."

As sustaining the proposition that the administrator of an estate or an executor has nothing to do with real estate unless expressly authorized by the provisions of the will, and that the title and right to the possession pass immediately to the devisees named in the will, see the following authorities, bearing more or less upon the question: *Gray v. Myers,* 45 Iowa 158; *Hodgin v. Toler,* 70 Iowa 21;

*Brundage v. Cheneworth,* 101 Iowa 256, 258; *Valley National Bank v. Crosby,* 108 Iowa 651, 656; *In re Estate of Acken,* 144 Iowa 519, 528; *Hatton v. Wheaton,* 158 Iowa 460, 464. That an executor becomes personally bound by a lease executed without express authority, see *Winter v. Hite,* 3 Iowa 142; *Peoria Steam Marble Works v. Hickey,* 110 Iowa 276, 277.

3. LANDLORD AND TENANT: quiet enjoyment covenant: breach: defense: pending partition.

The court instructed the jury that, by the terms of the lease, the defendant was personally bound to deliver to plaintiffs the possession of the rented premises, and that, upon entering possession, plaintiffs were entitled to the quiet enjoyment of the same; and the fact that a partition suit was pending at the time the lease was entered into was wholly immaterial, and the knowledge of the plaintiffs of the pendency of the suit was immaterial, because the defendant, with knowledge of the pendency of the suit, made the written contract of lease by which she bound herself to give possession to the plaintiffs, with an implied covenant therein for quiet enjoyment. The court further, in substance, said that it was the duty of the defendant to deliver possession of the premises and to secure to the plaintiffs the quiet and peaceable possession of the same, as against anyone acquiring and holding title superior to that of the defendant during the term of the lease. The fact of the pendency of the suit, and that the premises might be sold at partition sale, was wholly immaterial.

We are not prepared to say that being advised of a pending proceeding that might affect the power to give possession is "wholly" immaterial. It might be material on the question of whether certain damages may be allowed. But the record here is such that we do not have the question for decision. On that record, the instruction cannot be held erroneous.

4. LANDLORD AND
TENANT: leases:
construction:
covenant for
quiet enjoyment.
When the defendant entered into the written lease, she gave to the plaintiffs the right to the possession of the property described therein, for the term provided. This they became entitled to. This right, by the lease, she guaranteed to them. The possession is what she gave them by the lease. The possession is what they were entitled to under the lease. The lease itself was an assurance to them both of the possession and the right to the enjoyment of the possession during the term of the lease. As executrix, she had no authority to make the lease. As tenant in common, she had the authority. She exercised it, and bound herself, in the exercise, to the performance of the conditions of the lease. When a written lease is entered into between two parties competent to make a lease, the purpose of it is to give to the lessee the possession, or the right to the possession, of the property leased, for the period provided in the lease. That is what the lessee contracts for. That is what he is entitled to under his contract. By the making of the lease, this right is guaranteed to him by the assumed lessor. Take this away from the lessee, and you take away all that he has contracted for, and destroy the efficacy of the lease as an assurance of the right to the enjoyment of the premises.

This brings us to the fifth proposition: Is there implied in the lease a warranty of quiet enjoyment? Upon this proposition, we are not without authority. In Kerr on Real Property, Vol. 2, Section 1213, page 1065, the author says:

"The covenants usually implied on the part of the grantor are that he has a title, and therefore a right to make the lease, and that, in consideration of the rent to be paid him, the lessee shall not be disturbed in the possession by the lessor or those claiming under him, during the term of the lease."

At Section 1214, the author says:

"There is implied an undertaking on the part of the lessor that the lessee shall ·not be dispossessed or disturbed in his quiet enjoyment of the premises by the lessor, or by any persons claiming under him, or by anyone having the legal title or right of entry to the land (citing authorities). But there is no implied covenant to indemnify the lessee against the wrongful acts of a trespasser or other person, or against an action in ejectment brought by a third person not having legal title or right of entry."

See also *Pickett v. Ferguson*, 45 Ark. 177; *Shaft v. Carey*, (Wis.) 83 N. W. 288; *Kane v. Mink*, 64 Iowa 84; *Milheim v. Baxter*, 46 Colo. 155 (103 Pac. 376, 133 Am. St. Rep. 50), and cases cited; *Harmont v. Sullivan*, 128 Iowa 309.

Clearly, there was an implied covenant for a quiet enjoyment in the lease in question, and this covenant was broken by ouster. It is the very meat of the contract; it is the very purpose, essence and spirit of the contract; it is what one agrees to give for the consideration to be paid; and it is what the other agrees to pay the consideration for.

5. INTEREST: unliquidated demands: when allowable.

The sixth proposition involves the right to interest upon the damages from the date when they accrued. Complaint is made of the allowance of this. This contention is disposed of in *Chamberlain v. City of Des Moines*, 172 Iowa 500.

6. APPEAL AND ERROR: assignment of error: sufficiency.

Some complaint is made touching the introduction of evidence, and of the amounts allowed by the jury upon the several items of plaintiffs' claim. These complaints were not presented in the manner required by Rule 53 of the rules of this court. We do not find them under brief of points relied upon for reversal, and therefore do not consider them in the case for discussion in this opinion.

Upon the points submitted, we find no reversible error, and the case is—*Affirmed.*

LADD, EVANS and SALINGER, JJ., concur.

### SUPPLEMENTAL OPINION ON REHEARING.

LADD, J.—A rehearing was granted on

7. LANDLORD AND TENANT: leases: construction: covenant for quiet enjoyment.

the contention of appellant that, from the mere renting or leasing of the premises for a term of years, a covenant of quiet enjoyment is not to be implied. There are many respectable authorities so holding. See *Adams v. Gibney*, 6 Bing. 656; *Lovering v. Lovering*, 13 N. H. 513; *Baxter v. Ryerss*, 13 Barb. (N. Y.) 268; *Mershon v. Williams*, 63 N. J. L. 398 (44 Atl. 211); *Frost v. Raymond*, 2 Caines (N. Y.) 188 (2 Am. D. 228).

Anciently, estates were created by donation to the tenant, and thereupon, reciprocal relations arose by implication; from the tenant were due homage and feudal services, and in return, the donor or chief lord was bound to assure to the vassal the enjoyment of the estate. These duties were held to arise, however, not from express obligation or contract, but from the nature of the tenure. They were imposed upon the tenant by his acceptance of the estate, and might be exacted by the lord, who employed the term *"dedi,"* or other term of donation by which estates were created. Lord Coke says:

"Where *dedi* is accompanied with a perdurable tenure of the feoffor and his heirs, there *dedi* importeth a perdurable warranty for the feoffor and his heirs to the feoffee and his heirs." 2 Inst. 275.

Upon the enactment of the statute *quia emptores,* destroying the practice of subinfeudation, and cutting off the tenure, the correlative obligation of warranty could not be raised against the heir of the feoffor; but the feoffor himself was supposed to be bound by his gift and the

warranty for life. From this is derived the principle that, whenever an estate is created by the word "give," it implies a warranty for the life of the grantor. When it became the practice to authenticate the transfers of land by deeds, a warranty was held to be implied from the words of feoffment, *dedi* or *concessi;* and, as these words were uniformly employed by conveyances in the preparation of deeds, and the courts declared a warranty of quiet enjoyment to be implied therefrom, it was said that "no other verb in the law doth make a warranty but *warrantizo* only." Co. Litt. 384a. And the law seems still to obtain that, in the absence of express words of warranty, a covenant will not be implied from a conveyance of land unless *dedi* or *concessi* or their equivalent in meaning is found therein.

Up to this point, there seems to be no conflict in the authorities. This arises in determining whether a like doctrine is applicable to leases, and whether the use of certain words, as *"demisi"* or *"concessi,"* is essential to the implication of a warranty of quiet enjoyment in a lease for a term of years. In *Young v. Hargrave's Admr.,* 7 Ohio 427, the court says:

"In leases for years, the case is different. They were *not originally regarded as estates in the land,* but as contracts for the perception of the profits. The possession of the lessee was not regarded as in his own right, but as the possession of the grantor, and the destruction of the freehold was attended with the destruction of the lease. The lessee had no means of redress or indemnity except upon the contract. The words of the lease, 'yielding and paying,' etc., were construed a covenant by the lessee to pay rent; and the words 'grant, devise,' etc., were held to imply a covenant on the part of the lessor to pay damages to the tenant if the possession was lost. A warranty, therefore, is implied in a lease in a different sense from the implied

warranty of a freehold. The latter depends on tenure, the former on contract. The remedies, too, were originally different. In the latter, the disseisee recovered the value in land; in the former, damages only for the breach of the contract. Hence, a warranty is implied from any contract for the possession of lands amounting to a lease for years, no matter in what words it is framed; but the warranty of a freehold is not implied, except from the feudal term of donation."

In *Hamilton v. Wright's Admr.*, 28 Mo. 199, the lease recites that "the said Wright leases unto the said Dilfey," and the court concluded that there was an implied covenant for quiet enjoyment, saying:

"It is almost an axiom in the law that the words '*demisi*,' '*concessi*,' or demise and grant, in a lease for years, contain an implied covenant for quiet enjoyment, and that the lessor had power to demise; but it is insisted that no other words have that technical operation. In many of the early cases, which discuss the force of particular words on this subject, the leases were in Latin, and, as the words '*demisi*' or '*concessi*' were always employed, it was only necessary to decide on the effect of these words; and as, in England, leases are drawn by professional conveyancers, who use established forms or follow stereotyped phrases that contain the words 'grant' and 'demise,' their courts have not been called on to decide whether other equivalent words would not have the same force and imply the same covenants. Whilst, therefore, the adjudged cases assume or decide that the use of the word 'demise' of itself implied a covenant, it cannot be inferred that no other translation of '*demisi*' has the same operation. The case of *Lovering v. Lovering*, 13 N. H. 517, is the only case we have seen which denies that such an effect can be implied from the words 'let and lease,' and the reasoning of the court is founded solely on the absence of these words in the older cases. But

Rawle, in his learned treatise on Covenants for Title, properly observes that the only difference would seem to be that they used the Latin word *'demisi,'* of which he thinks 'lease' is a fair translation; and the law now seems to be that the implied covenants arise, not from particular or fixed terms, but from the words of leasing.     *   *   *   The lessor must have intended that the lease should be beneficial to the lessee, and the latter had the right to require of his landlord that the quiet enjoyment of it should be secured to him against eviction or disturbance by his act or the act of those who claim under or paramount to him.   (Smith, Land. & Ten. 262, 268.)   We think, then, that the lease in this case contained a covenant for quiet enjoyment implied by law, which ran with the land, and for the breach of which an action accrued to the assignee of the term."

In *Maule v. Ashmead,* 20 Pa. 482, Black, J., thus states the court's conclusion:

"It is not denied that the word *'demisi'* in a lease implies a covenant for quiet enjoyment during the term.   That word was not used here, for the lease was made by parol, and the parties did not understand Latin.   But the word 'lease' is a fair translation of *'demisi,'* and ought to be and is interpreted in the same way by the courts."

*Hart v. Windsor,* 12 Mees. & W. 68, 85; *Baugher v. Wilkins,* 16 Md. 35; *Wade v. Halligan,* 16 Ill. 507; *Ellis v. Welch,* 6 Mass. 246 (4 Am. D. 122).   A covenant for quiet enjoyment is implied in every mutual contract for the leasing and demise of land.   *Mack v. Patchin,* 42 N. Y. 167 (1 Am. Rep. 506); *Black v. Gilmore,* 9 Leigh (Va.) 446 (33 Am. D. 253); *Maxwell v. Urban,* 22 Tex. Civ. App. 565 (55 S. W. 1124).

In *Hanley v. Banks,* 6 Okla. 79 (51 Pac. 664), the correct rule is thus laid down, as approved by Wood, Land. & Ten., Sec. 354:

"Although there is in this lease no express covenant

for quiet enjoyment, the law implies such a covenant from the contract of leasing. The rule is that whether a lease contains a covenant for quiet enjoyment or not is, so far as the rights of the tenant are concerned, immaterial, as, in all cases, unless otherwise expressly provided, the law implies such a covenant. A covenant for quiet enjoyment is implied in every mutual contract for leasing, by whatever form of words the agreement is made; and, for the breach of such covenant occasioned through the fault of the lessor, the lessee has his remedy for such damages as result to him therefrom."

In a great number of cases, collected in a note at Section 79, 1 Tiffany on Landlord and Tenant, the law is assumed to be as above stated. A recent decision in England is to the effect that an undertaking for quiet enjoyment as against the acts of the lessor and those claiming under him is to be implied from the mere relation of landlord and tenant. *Budd-Scott v. Daniell,* 2 K. B. (1902) 351. It is said in Rawle on Covenants for Title, (5th Ed.) Section 274:

"In the absence of words of leasing, as, for instance, where the lease is by parol, it is well settled that the law will imply a covenant for quiet enjoyment from the mere relation of landlord and tenant."

This court so held in *Harmont v. Sullivan,* 128 Iowa 309. There is no reasonable ground for any other conclusion. One who rents or leases land or urban realty for a term at a stipulated monthly or yearly rental is as much bound to furnish the property for use during the term as the lessee is to pay the rent during such term. The use for the term is the subject of the contract, the thing negotiated; and the loss of this use for any portion of or all the period stipulated, through acts of the landlord or those claiming under him, or owing to a paramount title, would be a breach of his undertaking, regardless of the use of technical words,

such as "demise," in the contract. The covenant was clearly to be implied from the renting of the premises for the period specified. Other features of the petition for rehearing require no further attention.

There was no objection to the instruction on measure of damages prior to its being given, and for that reason, exceptions thereto cannot be considered. Section 3705-a, Code Supp., 1913.

We adhere to the opinion as originally filed, and the judgment of the district court is—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.