## TEXAS PACIFIC COAL & OIL CO. v. FOX et al. (No. 9429.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 5, 1921.)

**1. Estoppel ⟨key⟩38—After-acquired title passes under warranty deed.**

Title acquired by a vendor after he has conveyed a defective title, but with a covenant of warranty, passes, eo instanti, to his prior vendee upon theory of estoppel, which applies not only to the vendor, but to his privies in estate.

**2. Estoppel ⟨key⟩39—After-acquired title passes to grantee on theory of estoppel wherever the conveyance shows claim of ownership.**

Though a conveyance contained no warranty of title, yet, where its terms implied a claim of ownership of the fee-simple title by the grantor, the rule of estoppel whereby an after-acquired title will pass, eo instanti, to a prior grantee applies; the estoppel depending, not on a covenant of warranty, but on good faith and fair dealing.

**3. Landlord and tenant ⟨key⟩130(1)—Covenant of quiet enjoyment implied.**

Unless inconsistent with its terms, the covenant of quiet enjoyment and that the lessor has the right to lease for the term expressed is always implied in a lease; the covenant being ordinarily implied by the words lease, agreement, to let, grant, and demise.

**4. Mines and minerals ⟨key⟩73—Covenant of quiet enjoyment implied in oil lease.**

The covenant of quiet enjoyment which is implied in case of an ordinary lease should be implied with respect to an oil and gas lease.

**5. Estoppel ⟨key⟩37—After-acquired title of mortgagor passes to mortgagee.**

The rule of estoppel whereby after-acquired title of a vendor will pass to a prior vendee, etc., applies to a title acquired by mortgagor after execution of the incumbrance and inures to the benefit of prior mortgagee.

**6. Estoppel ⟨key⟩37—After-acquired title of oil lessor held to pass to lessee.**

Where plaintiffs' mother executed an oil and gas lease on a parcel of land in which plaintiffs owned undivided interests, the instrument using the terms "let" and "lease" and giving the lessee full and exclusive authority to enter on the premises, and plaintiffs thereafter conveyed their interest to their mother, such after-acquired title on principles of estoppel passed to the oil and gas lessee.

**7. Specific performance ⟨key⟩57—Option contract to purchase or lease may be enforced.**

An option contract giving the right to purchase land or to acquire a lease thereon may be specifically enforced if the same is supported by valuable consideration.

**8. Landlord and tenant ⟨key⟩20—"Lease" defined.**

Independently of the idea of contract, a "lease," which is more than a mere license to occupy land, possesses the property of passing an interest and partakes of the nature of an estate (citing Words & Phrases, Second Series, Lease).

**9. Estoppel ⟨key⟩37—After-acquired title held to pass though instrument be deemed a mere option and not formal lease.**

As a lease is a valuable property right and an option contract to acquire it can be specifically enforced, title acquired by a landowner after the execution of a so-called oil and gas lease will pass to the lessee on principles of estoppel, though the instrument be construed as a mere contract for an option to acquire a lease by complying at the lessee's election with the stipulations therein.

**10. Estoppel ⟨key⟩51—Defense of passage of after-acquired title available under plea of not guilty.**

The defense that after-acquired title of an oil and gas lessor passed to the lessee by estoppel is available by virtue of Rev. St. art. 7740, under plea of not guilty.

**11. Mines and minerals ⟨key⟩73—Confirmation of lease held to carry after-acquired title.**

Where a mother, who gave an oil and gas lease on which her son had an undivided interest, executed a confirmation of the lease after the son's conveyance of his interest to her, such confirmation being executed before execution of reconveyance to the son, the first deed of reconveyance being destroyed without delivery, the confirmation of the lease passed title to the son's undivided interest.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Trespass to try title by J. H. Fox and others against the Texas Pacific Coal & Oil Company. From a judgment for plaintiffs, defendant appeals. Reversed and rendered in part, and reformed and affirmed in part.

W. J. Oxford, Leslie Garnett, John Hancock, and L. D. Hawkins, all of Thurber, and Chandler & Pannill, of Stephenville, for appellant.

Sayles & Sayles, of Abilene, McLean, Scott & McLean, of Fort Worth, and C. R. Fields, of Ranger, for appellees.

DUNKLIN, J. On the 31st day of March, 1917, Mrs. Nancy C. Fox executed to the Texas & Pacific Coal Company, the predecessor of the Texas Pacific Coal & Oil Company, an oil and gas lease on a tract of 376 acres of land, in which the six plaintiffs in this suit, who are her children, owned an undivided interest of 174 acres, and she owned the remaining undivided interest in the tract. After the execution of the lease, plaintiffs conveyed to their mother their undivided interests, and the deed thereto was duly recorded. Subsequently, the mother reconveyed to plaintiffs, by separate deeds, the respective undivided interests theretofore conveyed to her by them. Prior to the execution of one of those reconveyances, viz., the one to plaintiff J. H. Fox, Mrs. Nancy C. Fox had ex-

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ecuted to the Texas Pacific Coal & Oil Company an instrument expressly confirming and ratifying the lease theretofore given by her, as to the entire tract of 376 acres.

Plaintiffs instituted this suit against the Texas Pacific Coal & Oil Company, in the statutory form of trespass to try title, to recover the undivided interest of 174 acres in the 376-acre tract, and upon the trial they relied solely on the deeds of reconveyance from their mother mentioned above.

The defendant answered by general demurrer, general denial, and a plea of "not guilty."

Plaintiffs recovered the undivided interest of 174 acres sued for, which, by the judgment, was apportioned among them in shares of 29 acres to each; the legal effect of the judgment being a cancellation of the lease as to that 174-acre interest. The defendant has appealed.

The principal question presented for our decision is whether or not the title acquired by Mrs. Nancy C. Fox from plaintiffs to the undivided interest of 174 acres, after she had executed the lease, inured to the benefit of the lessee, and operated as an estoppel against plaintiffs to claim adversely to the lessee through the deeds of reconveyance from their mother of the same interest.

We have reached the conclusion that that issue should be determined in favor of the lessee, appellant herein.

The lease in question was executed also by G. H. Fox, minor son of Mrs. Nancy C. Fox, but he is not a party to the suit, nor in any manner interested in the controversy, since other land covered by the lease and owned by him has been released from the operation of the lease, upon his disaffirmance of the contract, after reaching the age of his majority.

In the lease Mrs. Fox and her son were designated first parties, and the grantee second party. Following such designation, the lease contained this stipulation, among others, to wit:

"The first parties, in consideration of one hundred twenty-six and $^{50}/_{100}$ dollars to them paid, the receipt of which is hereby acknowledged, and the covenants hereinafter contained on the part of second party, do by these presents let and lease to second party for a period of 7 years from the date hereof, the following described premises situated in the county of Eastland, state of Texas, to wit: 705 acres of land out of league No. 2, McLennan county school land abstract No. 369, less 200 acres of land heretofore sold off being the J. C. Fox homestead place containing 505 acres more or less, hereby granting to second party full and exclusive authority to enter upon said premises and to dig, drill, operate for and procure natural gas or petroleum, together with the right of taking upon said premises and removing therefrom at pleasure any machinery, tools, lumber, pipe, casing and other things necessary in said work, and to construct on said premises and remove therefrom at pleasure pumping plants, tracks, tanks, pipe lines and other things necessary in the operation of the lease. * *. * "

Following that stipulation was a provision binding the lessee to pay to the lessors a rental of $1 per acre per year less the amount of any royalties paid to them for oil or gas found on the land by the lessee, the payment of said rentals to begin one year from the date of the lease and to be made for one year in advance. The lessee further agreed to pay to the lessors one-eighth of all the oil produced from the land as a royalty and also 10 per cent. of the amount realized from the sale of any gas from the land. The lease contained this further stipulation:

"It is further agreed between the parties hereto that in case natural gas or petroleum are discovered on said premises that this lease shall continue in full force and effect so long as any of these are produced in paying quantities, but in the event of second party failing to pay the first parties in advance on ten days' notice in writing by first party to second party, as above provided, the ground rent due under the terms and provisions hereof, that this lease shall be null and void and the first and second parties shall be released from all liabilities herein mentioned."

The record shows that the stipulated rentals were paid by the lessee more than 10 days in advance of their due dates for the year beginning March 31, 1918, and also for the year beginning March 31, 1919. And no contention was made by any one upon the trial of the case of any failure on the part of the lessee to pay the rentals stipulated, and this suit was instituted June 24, 1919, during the last-mentioned year for which the rentals were paid.

[1] According to the rule of decisions in this state, a title acquired by the vendor of land after he has conveyed a defective title, but with a covenant of warranty of title, passes, eo instanti, to his prior vendee. This is upon theory of estoppel, which applies to the vendor and his privies in estate and forbids them to assert an after-acquired title as against the vendee and his assignees, to whom the title has been warranted to be valid. Baldwin v. Root, 90 Tex. 546, 40 S. W. 3.

[2] Estoppel applies also, and to the same extent, in the absence of an express warranty of title, if the terms of the conveyance imply a claim of ownership of the fee-simple title by the grantor and the assertion of his right thereunder to the conveyance. Lindsay v. Freeman, 83 Tex. 259, 18 S. W. 727. The opinion in that case quotes with approval excerpts from the opinions in Van Rensselaer v. Kearney, 11 How. 325, 13 L. Ed. 703, and Hannon v. Christopher, 34 N. J. Eq. 465, both of which announce the rule, substantially, as above stated. And the quotation from the case last cited includes this statement:

"The estoppel does not depend upon the obligation of the covenant of warranty, although the books sometimes loosely say so; it depends on good faith, right, conscience, fair dealing, and sound justice."

To the same effect are the following authorities: Zarate v. Villareal, 155 S. W. 328; Breen v. Morehead, 126 S. W. 650; Lowry v. Carter, 102 S. W. 930; Scates v. Fohn, 59 S. W. 837; 8 R. C. L. pp. 680, 1058, 1059, and numerous decisions cited in note to Stephenson v. Patton (86 Kan. 379, 121 Pac. 498) shown in Ann. Cas. 1913C, 369, 370.

[3] In Maxwell v. Urban, 22 Tex. Civ. App. 565, 55 S. W. 1124, the following was said:

"One covenant always implied in a lease, unless inconsistent with its terms, is that of quiet enjoyment, and that the lessor has the right to lease for the term expressed."

To the same effect is Thomas v. Brin, 38 Tex. Civ. App. 180, 85 S. W. 842.

In 24 Cyc. 1057, it is said:

"The general rule is that the use of the word 'lease' or 'demise' in an instrument of lease imports a covenant for quiet enjoyment. So, it has been held that a covenant for quiet enjoyment is implied from the words 'agree to let' or the words 'grant and demise.' And the rule is sometimes broadly stated that a lease contains of necessity an implied covenant for quiet enjoyment."

Also, on page 911, the same authority says:

"Where a lessor has no title to the property which is the subject-matter of the lease, yet his lease will still operate by way of estoppel if he afterwards acquired title to such property at any time before the expiration of the term." Blackburn v. Muskogee Land Co., 6 Ind. T. 232, 91 S. W. 31.

[4] Those authorities had reference to the ordinary agricultural lease, but, on principle, there can be no substantial difference between such a lease and one for oil and gas, in so far as the question now under discussion is involved. Kilcoyne v. Southern Oil Co., 61 W. Va. 538, 56 S. E. 888; Heywood v. Fulmer, 158 Ind. 658, 32 N. E. 574, 18 L. R. A. 491; Wettengel v. Gormley, 160 Pa. 559, 28 Atl. 934, 40 Am. St. Rep. 733.

[5] By the same rule of estoppel a title subsequently acquired by a mortgagor inures to the benefit of the mortgagee in a prior mortgage. Anderson v. Casey-Swasey Co., 120 S. W. 918; Logue v. Atkeson, 35 Tex. Civ. App. 303, 80 S. W. 137; and even as to chattels, Ivy v. Pugh, 161 S. W. 939.

[6] As noted in the quotations from the lease originally given by Mrs. Nancy C. Fox, the language used was "let and lease," and the lessee was expressly granted "full and exclusive authority to enter upon said premises" for the purpose of developing the land for oil and gas. That and other language quoted implies that the grantors in the instrument were asserting the right of ownership of the fee-simple title in the land, and as such owners convenanted that the lessee should have exclusive possession of the land for the purpose of developing it for oil and gas, and, under the authorities cited above, Mrs. Nancy C. Fox and the plaintiffs, claiming under and through her, are estopped to deny that the undivided interest in the land acquired by her after the execution of the lease inured to the benefit of the lessee.

Appellees have cited National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979, and other decisions to a like effect, to support their contention that the lease in question did not convey any interest in the land but was a contract for an option to acquire an interest therein by complying, at appellant's election with the stipulations therein, and therefore cannot support the defense of estoppel now under discussion.

In National Oil & Pipe Line Co. v. Teel, supra, oil and gas lease contracts purporting to convey to the lessee the right to all minerals in the land were held not to have the effect of a conveyance of an interest in the land, but did convey the right, at the lessees' option, to acquire such an interest, which could be specifically enforced whenever the promisee complied with the stipulations and conditions of the instrument.

[7] Many other authorities might be cited announcing the rule that an option contract, giving the right to purchase land or to acquire a lease thereon, may be specifically enforced, if the same is supported by a valuable consideration. 25 R. C. L. pp. 235–238, inclusive, and decisions there cited.

[8] A "lease" is more than a mere license to occupy land. In 1 Taylor's Landlord and Tenant, § 14, this is said:

"Independently of the idea of a contract, a lease also possesses the property of passing an interest, and thence partakes of the nature of an estate, which, when limited to a certain period for the enjoyment of land becomes a term for years; but if it depends upon the duration of a life or lives, rises to the dignity of a freehold."

See, also, 2 Bouvier's Law Dictionary, p. 1887, and 3 Words and Phrases, Second Series, pp. 53–56, inclusive; Chandler v. Hart, 161 Cal. 405, 119 Pac. 516, Ann. Cas. 1913B, 1094.

[9] A lease is a valuable property right, and, if a valid option contract to acquire it can be specifically enforced in a court of equity, we fail to perceive any reasonable basis for the contention that such a contract is not sufficient to estop the owner of land who has executed it from asserting an after-acquired title to the land as against the promisee.

In the Teel Case, supra, whether or not the instrument involved conveyed an interest in land was a material issue because the defendant who was assignee of the grantee had interposed the plea of innocent purchaser to plaintiff's suit to recover the land. The Su-

preme Court held that, while the instrument gave the grantee the option to acquire an interest in the land, yet that right was not such a present title as would support the defense of innocent purchaser, and cited with approval an early decision to the effect that an equitable title will not support such a plea; in other words, that only a legal title can support the plea of innocent purchaser. It was further said, in effect, that the option right so given by the instruments would become a vested interest in the land when the promisee complied with the stipulations contained in the instrument. The announcement was in accord with the decision in Stitzle v. Evans, 74 Tex. 596, 12 S. W. 326, in which it was held that, while a deed reserving a vendor's lien to secure a purchase-money note was an executory contract leaving the superior title in the vendor it was executory only as to the vendee, and when his assignee paid, or tendered the amount due on the note, his title was thereby perfected; that title then passed under and by virtue of the deed already executed by the vendor.

In Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, the instrument in controversy was held to be a present conveyance of title to an interest in land, which was subject to taxation.

It seems to us that, aside from the defense of innocent purchaser from the grantee in such an instrument, and with respect solely to the asserted right on the part of the grantor, as against the grantee, to cancel the instrument as a cloud upon title, it is unnecessary to determine whether or not it was a present conveyance of title, since, if the grantee has a valid enforceable option contract, which is neither a present lease nor a present conveyance of minerals in the land, but does give the right to acquire a lease, giving the right to develop the land for minerals and to own a portion of such as he may extract from the land, coupled with the right of possession to accomplish that purpose, such an option contract so long as it is effective cannot be canceled as an invalid cloud upon title. Corsicana Petroleum Co. v. Owens (Sup.) 222 S. W. 154. Especially would this be true after the grantee has elected to exercise his option and has tendered performance of the stipulations required to perfect such lease, and has thus perfected his rights under the terms of the instrument already executed by the owner of the land, without the necessity of the execution of any further instrument by such owner.

At all events, the right which the lessee has thus secured by paying a valuable consideration was a valuable right to acquire minerals in the land, and to allow Mrs. Nancy C. Fox, or plaintiffs asserting title through her, to claim that the original lease did not convey the rights which it plainly purported to convey, would be to sanction a course of action that would be contrary to good conscience and fair dealing, in the same degree as if the instrument had been a deed with warranty of title, or a mortgage, or a lease for agricultural purposes.

[10] By another assignment it is insisted that under the defendant's general denial and plea of not guilty, in answer to plaintiffs' petition in trespass to try title, the defense of estoppel was not available; in other words, that such defense could not be invoked except by a special plea. That contention is without merit, because it is contrary to the provisions of article 7740 of our Revised Statutes, expressly providing that in actions of trespass to try title, under a plea of "not guilty," the defendant may prove any defense except the statute of limitations; and to an unbroken line of decisions that the defense of estoppel may be proven under a plea of "not guilty." Parker v. Cockrell, 31 S. W. 221; Lumkins v. Coates, 42 S. W. 580; Daugherty v. Templeton, 50 Tex. Civ. App. 304, 110 S. W. 553.

[11] The record shows that the deed originally executed by Mrs. Nancy C. Fox, in favor of plaintiff J. H. Fox, on February 1, 1919, to an undivided interest of 29 acres in the tract of land in controversy, was never delivered at all, but was destroyed, and that the deed upon which he relies for a recovery herein was not executed until March 8, 1919, which was several days subsequent to the date of the new instrument executed by Mrs. Fox, confirming the lease theretofore given by her to the appellant. Under such circumstances, such confirmation of the original lease had the effect to validate it as to that 29-acre interest, independent of the defense of estoppel. Steffian v. Milmo Nat. Bank, 69 Tex. 513, 6 S. W. 823; Hubbard v. Cox, 76 Tex. 239, 13 S. W. 170. This is noted as a further ground for a denial of any relief to plaintiff J. H. Fox.

For the reasons indicated, the judgment of the trial court, canceling the lease upon the 174 acres sued for, is reversed, and judgment is here rendered validating the lease as to the undivided interest of 174 acres recovered by plaintiffs and giving to the lessee and its assignees the same rights under and by virtue of the lease as if Mrs. Nancy C. Fox had owned such undivided interest when she executed the lease, on March 31, 1917. And subject to such validation of the lease and to said rights of the appellee thereunder, judgment is here rendered in favor of plaintiffs for title to said undivided interest of 174 acres, apportioned between them in the same manner as was done by the judgment of the trial court.

Reversed and rendered in part, and reformed and affirmed in part.