Collamer v. Kelley et al.

COLLAMER v. KELLEY *et al.*

|  |  |
|---|---|
| 12 | 319 |
| 101 | 612 |

1. LEASE. On the 8th of September, 1854, R. leased to W. certain premises for a term of fifteen years, reserving a rent of one hundred and fifty dollars per annum; on the 31st of January, 1855, W. sublet to S. for the full term acquired from R., S. covenanting to pay W.

Collamer v. Kelley et al.

rent at the rate of $250 per annum, and to deliver the possession to him at the expiration of the term. On the 18th of April, 1857, S. assigned this last lease to Y. who mortgaged his "leasehold interest under and by virtue of a lease from W. to S. duly assigned to said Y." to C. & S. who assigned the same to complainant. On the 14th. of May, 1859, W. assigned the R. lease to G. who, on the ensuing 8th of August, assigned the same to Y. who on the 29th of the same month assigned it to K. by whom it was assigned to respondent. *Held* :

1. That the assignment of the R. lease to Y. did not operate as a merger of that lease in the one executed by W. to S. which was the one mortgaged to C. & S.; that the lease from R. could not be merged in the smaller estate; that it could be merged only in the fee itself.

2. That the assignment of the R. lease to Y. did not have the effect to enlarge the estate described by the mortgage, or to make the mortgage a lien upon an estate in the premises not therein described,

3. That it did have the effect to release the lessee, (whether Y. or a purchaser under the mortgage,) from any liability to pay more than the $150 per annum rent, which was payable under the lease of R. to W.

2. SUB-LEASE. Where R. leased certain premises to W. and W. entered into a contract with S. wherein it was agreed that S. should use and occupy the premises during the term for which W. had leased them from R., and S. covenanted to pay W. an annual rent greater than that paid by W. to R., and to deliver the possession to W. and not to R., at the expiration of the term; *Held,* That it was a contract to sublet, and not an assignment of the original lease.

*Appeal from Scott District Court.*

TUESDAY, OCTOBER 22.

WM. RUSSELL on the 8th of September, 1854, was the owner in fee of lot 14, in block 63, in the city of Davenport, and on that day leased the same to Wm. Wood for fifteen years, terminating September 8th, 1869, reserving a ground rent of $150 per annum. On the 31st of January, 1855. Wood sub-let to Lewis E. Shelley for the full term acquired from Russell, Shelly covenanting to pay rent at $258 per annum and to deliver possession to Wood on the last day of the term. April 18th, 1857, Shelley assigned

Collamer v. Kelley et al.

this last lease to David T. Young.    January 1, 1858, Young
executed a mortgage to Cook & Sargent, on all his estate,
right, title and interest in and to said lot, " the said interest
and estate being a leasehold interest under, and by virtue
of a lease from one Wm. Wood to one Lewis Shelley, and by
said Shelley duly assigned to said David T. Young."    On
the 14th of May, 1859, Wood assigned the Russell lease to
C. W Griggs, who on the ensuing 8th of August assigned
the same to said Young.  December 23d, 1859, Cook & Sar-
gent assigned the Young mortgage to Collamer, and on the
29th of that month Young assigned the Russell lease to
Lewis Knowles.    January 12th, 1860, Collamer commenced
proceedings to foreclose the mortgage, making Young and
Knowles parties.    March 5, 1860, Knowles assigned his in-
terest to Kelly, and on the 24th of that month complain-
ant filed a supplement to his petition, making Kelly a party,
and claiming in substance that by the assignment to Young
by Griggs of August 8th, 1859, both leases were merged for
his benefit.    The respondents all answer ; the cause was
heard upon the issues made by the replication to these an-
swers, the exhibits and depositions found in the record and
a decree rendered as prayed by complainant, from which
Kelley appeals.

*D. L. Shorey* for the appellant.

I. A merger in law is always the sinking of a smaller in
a greater estate; the greater continuing as though the less
had never existed.    The plaintiff's mortgage is on the smal-
ler estate; the lease from Wood to Shelley.    In equity
merger is not favored, and will be allowed only for special
reasons to promote the interest of the parties.  4 Kent Com.
103 (7th ed.) *James* v. *Morey*, 2 Cow. 306.

II. While Kelly purchased *pendente lite* he had construc-
tive notice only of what the bill contained.  *Griffith* v. *Griffith*,
1 Hoff. Ch. R. 153.

III. The principle *nemo potest esse domines et tenens* has no application to this case, for the very good reason that whenever it applies, it is the estate of the tenant and not the estate of the lord that is merged.

IV. The contract, if between Wood and Shelley was an underlease and not an assignment of the Russell lease. 1 Greenl. Cr. Litle 32, Ch. 7 §§ 17 and 18 ; *Post* v. *Kearney*, 2 Cow. 394; 1 Paige Ch. R. 412.

*Thompson & Barner* for the appellee.

I. The transfer by Wood to Shelley, on the 31st of January, 1855, was an assignment and not an underlease, because it passed the whole term. 16 John. 159 ; 1 Chit. Bla., Book 2, p. 327 ; Doug. 183 ; 4 Kent Com. 96 ; 2 Wils. 375 ; *Parmenter* v. *Webber*, 2 Moore 656.

II. Young having, on the 8th of August, 1859, paid off and discharged the charge of Wood, the lease became free therefrom, and only liable to the Russell rent. Young having been, and continuing, in the possession of the premises.

III. If, however, it shall be held that this was an underlease, the case would be within the principle held by TILGHMAN, C. J., in 2 Binney, 142 : "That when the right to the rent and the right to the land are united in the same person, the rent is extinct." 3 Yates 128 ; 1 Penn. Bla. 300.

IV. Young could not under the circumstances revive against the plaintiff a charge that he had treated as being extinct, especially where, as in this case, the assignment was taken until full notice.    Taylor's Land. & Ten. § 437.

WRIGHT, J.— It will be observed, that complainant admits that. the mortgaged premises are subject to the rent-charge of $150 per annum to Russell.   The controversy is, whether they are also subject to the additional charge of $100, under the contract or agreement between Wood and Shelley, of January 31, 1855.   And in determ-

ining this question it is deemed by counsel to be material to ascertain whether this contract was a sub-lease or an assignment of the Russell lease. We think it must be regarded as an under letting and not an assignment. By the terms of the lease between Russell and Wood, the lessee, if he kept his covenants, had ten days after the expiration of the term within which to remove his improvements. Wood in his agreement with Shelley *reserves new rents*, and Shelley covenants *to deliver possession to Wood* and not to Russell. These covenants, we think, take from it the character of an assignment. *Post* v. *Kearney*, 2 Cof. 394. Under this contract, we are clear that Wood could have distrained for the rent due him. As between the parties to it, there was a reversionary interest in Wood, and not in his landlord Russell.

Wood never assigned the Shelley lease. He did assign the Russell lease, however, and the inquiry arises, what right did the assignee thereof, acquire, if any, to the Russell lease. We think that by his assignment Wood surrendered to his assignee all his right to control the estate, and that Griggs by such purchase was possessed of the same rights that Wood had. If he had assigned the Shelley lease, then it is undeniable that the right to demand and collect the $250 therein reserved, would have vested in the assignee. When he assigned the original lease, however, that under which he held the only estate claimed by him in the premises, he parted with that interest, and by privity of estate, the assignee acquired the right to demand the rent reserved in the sub-lease. That this was the intention is clear, not only from the face of the transaction, but the actual attitude and conduct of the parties. At the time of this assignment (May 14th, 1859,) Young was in the actual possession and enjoyment of the leased premises. There was no pretence that Griggs by his purchase acquired the right to such possession, or to any thing else than the greater rent reserved

in the Shelley lease. Acting upon this view and construction of the assignment, Griggs was treated as the landlord in the place of Wood, and as the one entitled to the rent reserved.

After Young had mortgaged to Cook & Sargent, then he purchased the interest of Griggs, which, as we have seen, was the right to demand and receive the rent reserved by Wood from Shelley. And the material inquiry is, what was the effect of that purchase upon the rights of complainant.

The ruling of the court below was based in part upon the doctrine that the purchase of the Russell lease by Young had the effect of extinguishing his right, or that of any subsequent assignee, to demand the rent; but more perhaps upon the ground that Young had induced Collamer to purchase the mortgage, upon the belief that Young's intention was to thus extinguish it, by uniting in himself the right to receive and the duty to pay the rent; and that, therefore, the rent payable was only $150 per year. If required to decide the case upon this latter ground, we should entertain grave doubts of its correctness. It is by no means clear to our minds, from the testimony, that Collamer, had good reason for the belief claimed. If this was true, however, and if Knowles had notice of all this prior to his purchase, the difficulty would still remain that the appellant Kelly had no such notice, except that implied or arising constructively from the pending action to foreclose the mortgage. As to this, however, Kelly had notice only of what the bill contained, that is, what it was that complainant claimed. And this was, merely a foreclosure of the mortgage on the interest of Young, under the Shelley lease. The existence of this mortgage and the lien thereby created, however, he knew as well before as after the institution of that suit. The suit itself, as then pending, no more than the mortgage, informed him of the complainant's position, that Young's

Collamer v. Kelley et al.

purchase from ˙Griggs, had the effect of extinguishing all rent reserved on the mortgaged premises, except that owing to Russell. If this was the effect, then Kelley stands in the same position with Young. If not, then it seems to us that this decree is wrong.

The idea that Young's purchase from Griggs had the effect of merging the estate held under the Russell lease in that held under the Shelley lease can not be entertained, for this, so to speak, would be the sinking of the *greater* into the *smaller* estate. If either perishes by the merger, it must be the less estate, which in this case was that mortgaged. The greater estate, that held under the Russell lease could only be swallowed up by merger in the fee itself which was in Russell. But it is not upon this ground that complainants' case rests. Under the Shelley lease, Wood was the lessor and Young, as the assignee of Shelley, the lessee. The rent by that lease reserved was, therefore, to be paid by Young and received by Wood. When Wood assigned the Russell lease to Griggs, he (Griggs,) for the purpose of payment, was the lessor and payee, and Young the lessee and payor. And when Young purchased from Griggs, he became lessor and payee, and lessee and payor. Not, be it understood, the lessor and payee, and the lessee and payor under the Russell, but under the Shelley lease. By doing this he bought his lessor's right to demand the $250 per year for the use of the lot, and as a consequence extinguished his obligation to pay the same, for he could not pay rent to himself. He could not, of course, in reference to the same estate, at the same time, sustain the incompatible relations landlord and tenant.

It is undeniably true that Young was under no obligation to Cook & Sargent, or their assignee Collamer, to buy in the other estate, or lessen the charge on the premises actually mortgaged. Suppose he does thus buy in, however, and it

is clearly his interest and as manifestly his intention, by this act, to extinguish the charge, he ought not, in equity, to be permitted to set this charge on foot to the prejudice of third persons. That it was most clearly his intent to extinguish this charge, there can be no doubt. By the payment of $240, as shown from the testimony, he in effect paid off and satisfied his own debt of about nine hundred dollars, due at the rate of $100 per year, for nine years. That it was his intention to do this, is well and sufficiently established by the testimony. To this view of the case, it is no answer that this would increase the incumbrance on Young's estate; that it would but add to the security of his debt, and was therefore not for his benefit or interest. Such an argument loses sight of the thought that he was liable at all events personally, for the debt secured by the mortgage. Not only so, but that Young by extinguishing this charge, embraced the value of the premises to himself, for they are obviously worth more when charged with $150 per year only, than if subject to an additional $100 per annum. And this increased value he realizes, whether he keeps the property or surrenders the same in payment of the mortgage debt.

Nor does the general rule referred to, that the principle, *nemo potest esse dominus et tenens* only applies where the estate of the tenant, and not that of the landlord is merged, militate against the views above expressed. It might, if it was claimed that the mortgage extended over and was a lien upon the after acquired estate. If a deed purports to convey a greater interest than that possessed at the time by the grantor, the after acquired interest to the extent of that which the deed purports to convey, will enure to the benefit of the grantee. (Code § 1202.) This rule, however, has no place where the deed conveys the estate which the grantor at the time actually possesses, and where he subsequently acquires a greater estate. But the position that Young's

purchase of the Russell lease extinguished his right to collect the rent reserved under the Shelley lease is not based upon any such view of the law. When he purchased the Russell lease, he became entitled to hold the premises under that, as well as under the sub-letting of Wood. He acquired thereby, at least one right, not before enjoyed and that was the privilege of removing the improvements made within ten days after the expiration of the term. It is a misuse of terms to say that the first lease was a charge upon the second, in such a sense that upon its purchase by Young it ceased, for all purposes, to have any vitality. The effect of such purchase was not to enlarge the estate covered by the mortgage, was not to merge the two leases in one, was not to make the mortgage a lien upon premises or an interest therein not included in the estate described, but as held by the court below, to release the lessee (whether Young or the purchaser under the mortgage sale,) from any liability to pay more than the $150 per annum rent.

Affirmed.