# IN THE SUPREME COURT OF IOWA

No. 09–0999

Filed April 8, 2011

**DUCK CREEK TIRE SERVICE, INC.,**
An Iowa Corporation, and **MIDWEST MEXICAN CONNECTION, LTD.,**
An Iowa Corporation,

      Appellants,

vs.

**GOODYEAR CORNERS, L.C.,**

      Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Mark J. Smith, Judge.

A landlord seeks further review of a court of appeals decision finding that it breached the covenant of quiet enjoyment contained in the leases for two of its tenants. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Michael J. McCarthy of McCarthy, Lammers & Hines, Davenport, for appellants.

Richard A. Davidson of Lane & Waterman LLP, Davenport, for appellee.

**WIGGINS, Justice.**

This appeal involves an action for damages filed by two shopping center sub-sublessees against their sub-sublessor based upon a breach of the covenant of quiet enjoyment. The leased premises involved in this action were subject to a master lease that had been assigned and subleased numerous times before the sub-sublessees obtained possession of their respective premises. The district court found in favor of the sub-sublessor and dismissed the sub-sublessees' claim. The court of appeals reversed the decision of the district court and remanded the case for a determination of damages. On further review, we find as a matter of law the sub-sublessor breached the covenant of quiet enjoyment. Therefore, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case to the district court to determine damages based on the record made below.

### I. Scope of Review.

A district court's judgment following a bench trial in a law action is reviewed by this court for correction of errors at law. *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). The district court's findings of fact have the effect of a special verdict and are binding so long as they are supported by substantial evidence. Iowa R. App. P. 6.907; *Land O'Lakes, Inc. v. Hanig*, 610 N.W.2d 518, 522 (Iowa 2000). "Evidence is substantial for purposes of sustaining a finding of fact when a reasonable mind would accept it as adequate to reach a conclusion." *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995). However, we are not bound by the district court's legal conclusions and application of legal principles and must reverse if the district court has applied erroneous rules of law that materially affected its decision. *Land O'Lakes, Inc.*, 610 N.W.2d at 522. Finally, we must view the evidence in

a light most favorable to the district court's judgment. *EnviroGas, L.P. v. Cedar Rapids/Linn Cnty. Solid Waste Agency*, 641 N.W.2d 776, 781 (Iowa 2002).

**II. Facts.**

The parties submitted a stipulation of facts regarding the liability issues presented to the district court. The court received testimony regarding the damage issues. The record shows the following facts, viewed in the light most favorable to the district court's ruling.

**A. Relationship Between the Leases and the Premises.** This appeal involves an action for damages based upon a breach of the covenant of quiet enjoyment brought by two shopping center sub-sublessees, Duck Creek Tire Service, Inc. and Midwest Mexican Connection, Ltd., against their sub-sublessor, Goodyear Corners, L.C. To understand how Duck Creek and Midwest obtained possession of their respective premises, we must establish the history of assignments and subleases involving the property.

On November 21, 1958, Antonio Corsiglia entered into a master lease with Summit Center for approximately fifteen acres of property located in Bettendorf. In 1961 Summit Center assigned its interest in the lease to Disco Corporation, who in turn assigned this interest to A. Abner Rosen and Abraham Kamber, doing business as Moday Realty Co. This series of transactions made Moday, Corsiglia's master lessee.

In 1986 Moday subleased approximately one acre of the property to Jose Bucksbaum. In 1988 Bucksbaum assigned his interest in the sublease to Midkim, Inc. By this time, someone had erected a building on the one-acre site. Later in 1988, Midkim sub-subleased approximately 6000 square feet of floor space in the building located on the acre of subleased property to Goodyear Tire & Rubber Company.

This sub-sublease contained an express covenant of quiet enjoyment, which stated: "If [Goodyear Tire & Rubber] shall perform all and singular the covenants herein imposed upon it, [Midkim] warrants and will defend [Goodyear Tire & Rubber] in the enjoyment and peaceful possession of the Demised Premises during the term hereof."

In 1990 Midkim entered into another sub-sublease with Midwest for approximately 3000 square feet of floor space in the building located on the acre of subleased property. This sub-sublease also contained an express covenant of quiet enjoyment that provided:

> [Midkim] covenants that its interest in said premises is by leasehold interest and that [Midwest] on paying the rent herein reserved and performing all the agreements by [Midwest] to be performed as provided in this Lease, shall and may peaceably have, hold and enjoy the demised premises for the term of this Lease free from molestation, eviction or disturbance by [Midkim] or any other persons or legal entity whatsoever. . . . [Midkim] shall provide [Midwest] with written evidence of [Midkim's] valid leasehold interest.

On February 1, 2007, Goodyear Tire & Rubber assigned its interest in its sub-sublease to Duck Creek.

At some point, Midkim mortgaged its leasehold interest in the one-acre parcel to Norwest Bank. Subsequently, in 1997 Midkim defaulted on its mortgage and Norwest Bank foreclosed on the mortgage and obtained a sheriff's deed to Midkim's one-acre leasehold interest. In 1998 Norwest Bank assigned this interest—which was subject to the sub-subleases of both Duck Creek and Midwest—to Goodyear Corners, L.C. To better visualize the transactions involved in this case, we have included a flow chart contained in the court of appeals' decision that sets out the various interests of the parties in the two parcels leased by Duck Creek and Midwest.



**B. Transactions Causing Duck Creek and Midwest to File this Appeal.** Beginning in 2005, Moday failed to make rental payments to Corsiglia pursuant to the master lease. On December 6, 2006, Corsiglia sent a "Notice to Quit, Notice of Nonpayment of Rent, and Notice of Voiding Rental Agreement" to Moday stating the master lease between the parties would terminate in fifteen days if Moday failed to cure its rental delinquency. Moday failed to cure the delinquency, and accordingly, Corsiglia terminated the master lease. On January 3, 2007, Corsiglia notified Goodyear Corners that Corsiglia had terminated the master lease covering the entire property. Goodyear Corners then notified Duck Creek and Midwest that they no longer had any right to the possession of the premises under the sub-subleases due to the termination of the master lease.

On August 26, 2005, Corsiglia filed a petition at law against Moday, seeking to recover Moday's delinquent rental payments as well as all future rent due under the terms of the master lease. On March 28, 2007, Goodyear Corners joined in this suit and asserted a third-party claim against Moday alleging it had sustained damages as a proximate result of Moday's breach of the master lease. Goodyear Corners filed a motion for partial summary judgment and alleged Moday's failure to pay all the rent and taxes due under the master lease was a breach of the covenant of quiet enjoyment contained in the sublease between Moday and Goodyear Corners.[1] The district court ultimately granted Goodyear Corners motion for partial summary judgment on this claim.

On August 24, 2007, Duck Creek and Midwest filed separate petitions of intervention against Goodyear Corners alleging Goodyear Corners breached the covenant of quiet enjoyment in the parties' sub-subleases, causing Duck Creek and Midwest damages. In answer to both petitions of intervention, Goodyear Corners asserted the following affirmative defenses: (1) when it acquired its leasehold interest by way of a sheriff's sale, it did not assume any obligations under the sub-subleases; (2) Duck Creek and Midwest had knowledge of a paramount lease and assumed the risk regarding its possible termination; and (3) Duck Creek and Midwest could have protected their interests by obtaining a nondisturbance agreement from the owner of the property,

---

[1]The sublease between Moday and Goodyear Corners provided:

14. Quiet Enjoyment: [Moday] covenants that upon [Goodyear Corners] paying the above specified rent and performing and complying with all the terms, conditions and covenants of this lease, [Goodyear Corners] shall peaceably have, hold and enjoy the Demised Premises for the term aforesaid, subject to any mortgage to which this lease shall be or may become subject.

Corsiglia, and their failure to do so was the sole proximate cause of any damages sustained.

After a bench trial, the district court filed its findings of fact, conclusions of law, and entry of judgment. First, the district court found Goodyear Corners assumed all the rights and obligations under the sub-subleases when it purchased an assignment of Midkim's leasehold interest from Norwest Bank because it collected rent from Duck Creek and Midwest and did nothing to indicate it did not assume all the obligations of the sub-subleases. Alternatively, the court held Goodyear Corners was estopped from asserting its statute-of-frauds defense because it collected rent under the sub-subleases and did not notify Duck Creek and Midwest it did not intend to honor the sub-subleases. Finally, the court found Duck Creek and Midwest knew they were entering sub-subleases, which made them subject to superior leases. Thus, the court reasoned Duck Creek and Midwest had a duty to ascertain the terms of the superior leases and obtain guarantees from the superior leaseholders to honor their sub-subleases. Accordingly, because Duck Creek and Midwest failed to protect their leasehold interests and Goodyear Corners was not at fault for the termination of the master lease, the court held Duck Creek and Midwest could not obtain damages from Goodyear Corners for violation of the covenants of quiet enjoyment based on the termination of the master lease. Consequently, the district court dismissed Duck Creek's and Midwest's petitions of intervention for lack of proof of a breach of the sub-subleases by Goodyear Corners.

Duck Creek and Midwest filed a notice of appeal from the district court's judgment and rulings. We transferred the case to the court of appeals. The court of appeals reversed the district court's finding that

Duck Creek's and Midwest's claims failed for lack of proof of a breach of the sub-subleases and remanded the case to the district court to determine damages resulting from Goodyear Corners' breach of the covenants of quiet enjoyment contained in the sub-subleases. Subsequently, Goodyear Corners filed an application for further review, which we granted.

**III. Issues.**

Goodyear Corners raises two issues on appeal. First, we must decide whether Goodyear Corners assumed Midkim's obligations under the sub-subleases' covenants of quiet enjoyment, when it purchased an assignment of Midkim's leasehold interest from Norwest Bank. Second, we must determine whether Duck Creek and Midwest can enforce the covenants of quiet enjoyment against Goodyear Corners, when the breach of the covenants is not caused by any fault of Goodyear Corners, but rather by the fault of Moday.

**IV. Analysis.**

**A. Whether Goodyear Corners Assumed Any Liabilities or Obligations of Midkim When it Took the Assignment from Norwest.** At trial, Goodyear Corners argued there was no documentation of any kind indicating it assumed any liabilities or obligations under the sub-subleases between Midkim, Goodyear Tire & Rubber, and Duck Creek, or Midkim and Midwest. Moreover, it argued the statute of frauds barred any oral evidence of such an assumption. Therefore, Goodyear Corners claimed it could not be held liable for the breach of the covenants of quiet enjoyment in the sub-subleases.

The district court rejected these arguments. On appeal, the court of appeals held Goodyear Corners failed to preserve error on this issue because it did not file a cross-appeal. In its application for further

review, Goodyear Corners claims it was not required to cross-appeal to preserve this issue and urges us to consider its merits.

1. *Preservation of error.* Generally, a party must raise an issue and the district court must decide it for that issue to be properly preserved for appellate review. *Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002). In its trial brief filed in the district court, Goodyear Corners raised the issue that it did not assume any liabilities or obligations under the sub-subleases between Midkim, Goodyear Tire & Rubber, and Duck Creek, or Midkim and Midwest. Additionally, the district court rejected this claim in its ruling.

Under this procedural history, Goodyear Corners is not required to cross-appeal to preserve this issue on appeal. Goodyear Corners was the prevailing party at the district court. Although it lost on this issue in the district court, it prevailed on the merits on another ground. On appeal, Goodyear Corners is simply attempting to save the judgment rendered in its favor by arguing that an alternative ground for relief raised in the district court allows us to affirm the district court's judgment.

It is well-settled law that a prevailing party can raise an alternative ground for affirmance on appeal without filing a notice of cross-appeal, as long as the prevailing party raised the alternative ground in the district court. *See, e.g., Jasper v. H. Nizam, Inc.,* 764 N.W.2d 751, 774–75 (Iowa 2009); *Greene v. Friend of Court,* 406 N.W.2d 433, 435 (Iowa 1987); *Lowery Invs. Corp. v. Stephens Indus., Inc.,* 395 N.W.2d 850, 852 (Iowa 1986); *Kroblin Refrigerated X Press Inc. v. Ledvina,* 256 Iowa 229, 233, 127 N.W.2d 133, 136 (1964). Thus, Goodyear Corners need not file a cross-appeal to preserve this issue since it constitutes an alternative ground by which we may affirm the district court's judgment. Accordingly, Goodyear Corners has preserved for our review the issue of

whether it assumed any liabilities or obligations under the sub-subleases.

2. *Merits.* The district court found Goodyear Corners assumed all the rights and obligations under the sub-subleases when it purchased an assignment of Midkim's leasehold interest from Norwest Bank. The district court also found Goodyear Corners was estopped from asserting its statute-of-frauds defense as contained in Iowa Code section 622.32 (2007). Goodyear Corners admits that when it took its interest in the property from Norwest Bank, it acquired Midkim's interest in the property due to Midkim's sublease from Moday. However, Goodyear Corners further claims, when it acquired its interest from Norwest Bank, it did not assume any liabilities or obligations owed to Midkim's sub-sublessees, Duck Creek or Midwest. It bases its argument on the grounds that the assignment of the sublease from Norwest Bank to Goodyear Corners made no reference to any sub-subleases. Therefore, it could not be liable to Duck Creek or Midwest for Moday's breach of the covenants of quiet enjoyment.

An assignment of a leasehold interest occurs when the lessee transfers its entire interest in the premises, for the unexpired term of the original lease, without retaining any reversionary interest. 49 Am. Jur. 2d *Landlord & Tenant* § 917, at 847 (2006); 52 C.J.S. *Landlord & Tenant* § 42, at 107–09 (2003); *accord Berg v. Ridgway*, 258 Iowa 640, 646, 140 N.W.2d 95, 100 (1966). The assignment between Norwest Bank and Goodyear Corners of Midkim's leasehold interest provided:

> NORWEST BANK IOWA, NATIONAL ASSOCIATION, a banking organization . . . does hereby convey to GOODYEAR CORNERS L.C., an Iowa limited liability company, *the lessee's rights* under that certain ground lease dated October 6, 1986 . . . between Moday Realty Co., as lessor, and Jose Bucksbaum, as lessee . . . .

(Emphasis added.)

An assignment of a lease places the assignee in the same relationship toward the lessor as was occupied by the lessee, meaning the assignee assumes all the burdens and benefits originally held by the lessee. Restatement (Second) of Contracts § 328(1), at 44–45 (1981); *accord* 52 C.J.S. *Landlord & Tenant* § 49, at 114; § 51, at 116–17. This assignment used the general terms of "the lessee's rights under [the] . . . ground lease." Therefore, Goodyear Corners took all the interest Midkim had in the premises when it purchased the assignment from Norwest Bank. As we have previously held:

> When one accepts the assignment of a lease he not only has the benefits of the lease but the burdens as well. He stands in the shoes of the lessee at least for the period of time he occupies the premises.

*Berg*, 258 Iowa at 644–45, 140 N.W.2d at 99; *accord Pickler v. Mershon*, 212 Iowa 447, 452–53, 236 N.W. 382, 385 (1931). Accordingly, by purchasing the assignment from Norwest Bank, Goodyear Corners stepped into the shoes of the sublessee, Midkim, and assumed all the burdens as well as benefits held by Midkim under the sublease.

A sublease reserves a reversionary interest in the lessee, whereas an assignment is the transfer of the lessee's entire interest, without reserving any reversionary interest. *Berg*, 258 Iowa at 646–47, 140 N.W.2d at 100; *accord* 1 Milton R. Friedman & Patrick A. Randolph Jr., *Friedman on Leases* § 7:4.1, at 7–82 (5th ed. 2010) [hereinafter *Friedman on Leases*]. Consequently, when Midkim entered into the sub-subleases with Duck Creek and Midwest, it retained a reversionary interest in the premises, as well as obtained certain rights and duties under the sub-subleases. However, when Norwest Bank assigned Midkim's leasehold interest to Goodyear Corners, Midkim retained no reversionary interest

in the premises. Essentially, the assignment transferred any and all interests Midkim had in the premises to Goodyear Corners, including any reversionary interest Midkim had previously retained via the sub-subleases as well as its rights and duties under the sub-subleases. Thus, it was not possible for Midkim to assign its leasehold interest to Goodyear Corners without also assigning its interests in the Duck Creek and Midwest sub-subleases.

Our conclusion is supported by a case decided long ago by this court. In *Collamer v. Kelley*, 12 Iowa 319, 320 (1861), Russell leased a piece of land to Wood. Wood then entered into a sublease with Shelley. *Collamer*, 12 Iowa at 320. Shelley later assigned his interest to a third party, Young. *Id.* at 320–21. Subsequently, Wood assigned his interest in the master lease to another third party, C. W. Griggs. *Id.* at 321. However, Wood never assigned his interest in the sublease. *Id.* at 323. The issue decided by the court is what rights Griggs acquired under the sublease from accepting the assignment of the master lease. *Id.*

We found that by the assignment of the master lease, Wood surrendered to Griggs all his rights to control the estate, and by accepting the assignment Griggs possessed all the same rights Wood had in the estate. *Id.* This included the right to demand rent from the sublessee, Young. *Id.* Thus, we held by accepting the assignment of the master lease from Wood, Griggs not only acquired all of Wood's rights and duties under the master lease, but also stepped into Wood's shoes as the sublessor and acquired all Wood's rights and duties under the sublease as well. *Id.* at 323–25.

The facts of this case require the same result. When Goodyear Corners purchased the assignment of the sublease from Norwest Bank, Goodyear Corners stepped into the shoes of the sublessee, Midkim, and

assumed all the burdens and benefits under the sublease. Moreover, as recognized in *Collamer,* Goodyear Corners also stepped into Midkim's shoes and acquired all of Midkim's rights and duties under its sub-subleases with Duck Creek and Midwest. Therefore, the district court correctly held Goodyear Corners assumed all of Midkim's rights and obligations under the sub-subleases when it purchased an assignment of Midkim's leasehold interest from Norwest Bank.

3. *Statute-of-frauds claim.* Goodyear Corners claims that the statute of frauds prevents Duck Creek and Midwest from enforcing the covenants of quiet enjoyment contained in their sub-subleases. It relies on section 622.32 of the Iowa Code that provides:

> Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by the party's authorized agent:
>
> . . . .
>
> 3. Those for the creation or transfer of any interest in lands, except leases for a term not exceeding one year.

Iowa Code § 622.32.

The statute of frauds is not a rule of substantive law, but rather a rule of evidence. *Sun Valley Iowa Lake Ass'n v. Anderson,* 551 N.W.2d 621, 630 (Iowa 1996). The statute of frauds does not render oral promises creating or transferring an interest in land invalid. *Id.* The statute only relates to the manner of proof and renders oral proof of such promises incompetent. *Recker v. Gustafson,* 279 N.W.2d 744, 748 (Iowa 1979). The party asserting the statute must raise it by an objection at trial. *Harriott v. Tronvold,* 671 N.W.2d 417, 422 (Iowa 2003).

We have decided that when Goodyear Corners purchased an assignment of Midkim's leasehold interest from Norwest Bank, it

assumed all the obligations Midkim owed to Duck Creek and Midwest under the sub-subleases. Thus, the question becomes is there competent proof in the record to establish the covenants of quiet enjoyment in Duck Creek's and Midwest's sub-subleases.

The parties submitted this case on a stipulation. The stipulation introduced into evidence Midkim's sub-sublease with Goodyear Tire & Rubber, Goodyear Tire & Rubber's assignment of that sub-sublease to Duck Creek, and Midkim's sub-sublease with Midwest. The stipulation did not limit the purpose for which the parties admitted these documents. These documents contain proof of the covenants of quiet enjoyment that are the subject of this action. Although Goodyear Corners might have been able to argue that the statute of frauds prevents the admissibility of the covenants of quiet enjoyment, we need not decide the issue because Goodyear Corners allowed the documents containing the covenants of quiet enjoyment to be admitted into evidence without objection. Therefore, we conclude there was competent evidence in the record for the district court to find the covenants of quiet enjoyment were part of the obligations assumed by Goodyear Corners when it purchased the assignment of Midkim's leasehold interest from Norwest Bank, and the statute of frauds did not prohibit such a finding.

**B. Whether Duck Creek and Midwest Can Enforce the Covenants of Quiet Enjoyment Against Goodyear Corners, When the Breach of the Covenant is Not Caused by Any Fault of Goodyear Corners, but Rather by the Fault of Moday.** The covenant of quiet enjoyment is a covenant and warranty by the lessor that the tenant shall have quiet and peaceful possession of the demised premises as against the lessor, any person claiming title through or under the lessor, or any person with a title superior to the lessor. *Cohen v. Hayden,* 180 Iowa

232, 249, 163 N.W. 238, 239 (1917) (supplemental opinion on rehearing); *Kane v. Mink*, 64 Iowa 84, 86, 19 N.W. 852, 853 (1884); *see also* 3 *Friedman on Leases* § 29:2.1, at 29–2 to 29–3, § 29:2.2, at 29–8; 1 Emanuel B. Halper, *Shopping Center and Store Leases* § 17.07, at 17-14 to 17-15 (rev. ed. 2003); Robert S. Schoshinski, *American Law of Landlord and Tenant* § 3:3, at 94–95 (1980); 5 *Thompson on Real Property* § 41.03(c), at 151 (N. Gregory Smith ed., 2d Thomas ed. 1998). When a tenant is actually evicted from the leased premises, a breach of the covenant of quiet enjoyment has occurred. *Eggers v. Mitchem*, 240 Iowa 1199, 1201, 38 N.W.2d 591, 592 (1949); *see also* Schoshinski, *American Law of Landlord and Tenant* § 3:4, at 95–96; 5 *Thompson on Real Property* § 41.03(c)(1), at 151.

Duck Creek's express covenant of quiet enjoyment stated, "Lessor warrants and will defend Lessee in the enjoyment and peaceful possession of the Demised Premises during the term hereof." Midwest's express covenant of quiet enjoyment stated, "Tenant . . . shall and may peaceably have, hold and enjoy the demised premises for the term of this Lease free from molestation, eviction or disturbance by the Landlord or any other persons or legal entity whatsoever." We construe these provisions as providing Duck Creek and Midwest with the protection generally available under an implied covenant of quiet enjoyment because the parties do not claim these express covenants are more restrictive than the implied covenant of quiet enjoyment. *See* 3 *Friedman on Leases* § 29:2.2, at 29–8 to 29–9. Moreover, because the covenant of quiet enjoyment runs with the land, Goodyear Corners acquired the burdens of the express covenants of quiet enjoyment when it purchased the assignment of Midkim's leasehold interest from Norwest Bank. *Id.* § 29:2.7, at 29–19 to 29–20.

Duck Creek and Midwest were evicted from the premises when Corsiglia asserted his superior title to the premises due to Moday's breach of the master lease. Thus, we are dealing with a breach of the express covenants of quiet enjoyment contained in both Duck Creek's and Midwest's sub-subleases based on the assertion of a paramount title. A paramount title is

> a legal interest in the leased property held by a third party at the time the lease is made, and not terminable at the will of the landlord [Goodyear Corners] or by the time the tenant [Duck Creek or Midwest] is entitled to possession . . . .

Restatement (Second) of Prop.: Landlord & Tenant § 4.1(1), at 121 (1977). Accordingly, we must determine whether Duck Creek and Midwest can recover from Goodyear Corners for breach of the express covenants of quiet enjoyment, when their eviction was caused by the assertion of a paramount title by a paramount titleholder after Duck Creek and Midwest, as tenants, enter onto the premises.

The Restatement (Second) of Property: Landlord and Tenant, deals with this situation. It provides:

> Except to the extent the parties to a lease validly agree otherwise, after the tenant enters into possession there is no breach of the landlord's obligations because of the existence of a paramount title, but there is a breach of his obligations if there is an eviction by a paramount title, if the eviction deprives the tenant of the use contemplated by the parties. For that breach the tenant may:
>
> (1)    terminate the lease in the manner prescribed in § 10.1 and recover damages to the extent prescribed in § 10.2.

Id. § 4.3, at 140. This rule developed from the common law view, which held the eviction of a tenant by the holder of a paramount title is attributable to the tenant's landlord and constitutes a breach of the covenant of quiet enjoyment, entitling the tenant to seek damages from

its landlord. *Id.* § 4.3 cmt. *b*, at 141; *see also* 5 *Thompson on Real Property* § 41.03(c)(6)(iii), at 167 (recognizing where the covenant of quiet enjoyment is breached by the actions of a paramount titleholder, the tenant's remedies are against the landlord rather than the paramount titleholder).

This rule is also consistent with our case law. In *Cohen v. Hayden*, heirs of an estate held the premises in question as tenants in common. 180 Iowa 232, 240, 157 N.W. 217, 219 (1916). At a time when the property was held as tenants in common, one of the heirs, Hayden, leased the property to Cohen for a term of years. *Id.* at 234, 157 N.W. at 217. During the term of the lease, a partition action between the tenants in common concluded. *Id.* The referee in the partition action sold the premises and the purchaser evicted Cohen from the premises. *Id.* In *Cohen*, the heirs of the estate were the paramount titleholders. After the sale by the referee, the purchaser became the paramount titleholder and evicted Cohen from the property. Under these facts, we held Hayden, as landlord, was liable to Cohen for damages by reason of Hayden's breach of the covenant of quiet enjoyment even though the eviction was caused by the assertion of a paramount title held by the subsequent purchaser. *Id.* at 244–45, 157 N.W. at 221.

We believe the rule contained in section 4.3 of the Restatement (Second) of Property: Landlord and Tenant is sound and consistent with our prior case law. Accordingly, we adopt it as controlling. Even with the adoption of section 4.3, Goodyear Corners argues Duck Creek's and Midwest's knowledge of the paramount title precludes them from asserting their claims that Goodyear Corners breached the covenants of quiet enjoyment.

Goodyear Corners supports its claim by citing illustration nine to section 4.3. Illustration nine states:

> 9. L leases corner commercial property to T for twenty years. The parties contemplate that T will erect a gasoline filling station thereon and that T will require financing in the form of a construction loan. T enters. When he seeks to obtain his construction loan, he discovers that the leased property is subject to a mortgage and when requested to do so, the mortgagee refused to subordinate his mortgage to the construction loan, with the result that T is unable to obtain his loan. The assertion by the mortgagee of his rights is an eviction that prevents the use contemplated by the parties and L is in default. If T knew of the mortgage at the time he entered the leased property, the mortgagee's assertion of his rights in the manner described above would not be an eviction.

Restatement (Second) of Prop.: Landlord & Tenant § 4.3 illus. 9, at 143–44. We disagree with Goodyear Corners' argument.

First, illustration nine goes to the issue of when the loss of use of a premises is an eviction. Here, Duck Creek and Midwest were evicted. Illustration nine is not applicable.

Second, comment *f* to section 4.3 does provide, "knowledge [of a paramount title] on the tenant's part may under certain circumstances justify the conclusion that the parties intended that the assertion of the known paramount title would not be a ground for holding the landlord in default." *Id.* § 4.3 cmt. *f*, at 146. However, mere knowledge of the paramount title is irrelevant. *See id.* § 4.3 reporter's note to cmt. *f*, at 149 (recognizing knowledge of a paramount title has generally been held irrelevant). The circumstances of the transaction must indicate the lessee's knowledge of the paramount title was a waiver of the lessee's rights under the covenant of quiet enjoyment. Under the stipulation entered into by the parties, there are no circumstances of the transaction

indicating that Duck Creek or Midwest waived their rights under the covenants of quiet enjoyment contained in their sub-subleases.

Third, Goodyear Corners' position is inconsistent with our holding in *Cohen.* At the time Cohen entered into the lease, he was not only aware of the paramount title, but knew a partition action had been filed. *Cohen,* 180 Iowa at 236, 157 N.W. at 218. In *Cohen,* we held the knowledge of the partition action was immaterial with regard to whether the landlord breached the covenant of quiet enjoyment. *Id.* at 243–44, 163 N.W. at 220–21.

Finally, every sublessee has knowledge of a paramount title by the mere fact that the sublessee is entering into a sublease. Thus, under Goodyear Corners' theory that knowledge of a paramount title will defeat a claim for the breach of the covenant of quiet enjoyment, no sublessee will ever be able to enforce a covenant of quiet enjoyment. Goodyear Corners' position is inconsistent with the Restatement's position and existing Iowa law. In situations such as this, if a landlord does not want to be held responsible for a breach of the covenant of quiet enjoyment caused by the actions of a paramount titleholder, the landlord should consider including such a provision in the lease.

Accordingly, applying the law contained in section 4.3 of the Restatement (Second) of Property: Landlord and Tenant, we find the district court's findings were not supported by substantial evidence and, as a matter of law, Duck Creek and Midwest should have prevailed on their breach-of-the-covenants-of-quiet-enjoyment claims.

**V. Disposition.**

We vacate the decision of the court of appeals and reverse the judgment of the district court because we find, as a matter of law, Duck Creek and Midwest should prevail on their breach-of-the-covenant-of

quiet-enjoyment claims.  Therefore, we remand the case to the district court to decide the issue of damages based on the record made below.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Waterman, Mansfield, and Zager, JJ., who take no part.