# IN THE COURT OF APPEALS OF IOWA

No. 15-2079
Filed February 8, 2017

**RICK PETRO,**
  Plaintiff-Appellant/Cross-Appellee,

**vs.**

**STATE OF IOWA,**
  Defendant-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Warren County, Bradley McCall, Judge.

The plaintiff in a suit for intentional infliction of emotional distress and negligent hiring against the State of Iowa appeals from the district court's summary dismissal. **AFFIRMED.**

Karmen R. Anderson of The Law Office of Karmen Anderson and Scott L. Bandstra of Bandstra Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Anne E. Updegraff, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**PER CURIAM.**

Rick Petro appeals from the district court's summary dismissal of his lawsuit against the State of Iowa for intentional infliction of emotional distress (IIED) and negligent hiring and supervising. Petro sued the State for civil tort damages claiming the Iowa Department of Human Services (DHS) acted improperly, by and through its employee, in the employee's acts and omissions during the course of juvenile court proceedings, which ultimately concluded with the termination of Petro's parental rights to his two children. The State filed for summary judgment, asserting Petro's suit failed to state a recoverable claim for a number of reasons. The district court found that Petro's suit was barred by res judicata, granted the State's motion for summary judgment, and dismissed Petro's claims. Petro appeals and the State cross-appeals.

**I. Background Facts and Proceedings.**

In August 2009, Petro was arrested and charged with domestic abuse assault causing bodily injury. It was alleged Petro had assaulted his wife in front of their two children. As a result, DHS became involved with the family and a founded child abuse assessment—for denial of critical care—resulted. The State filed petitions alleging the children were children in need of assistance (CINA).

In October, DHS filed an application with the juvenile court to have the two children removed from Petro's care. The application alleged Petro was violent and had threatened to kill one of the children if the child reported the physical abuse. It also described Petro as "explosive" and "a ticking time bomb." The parties reached an agreement whereby the State stopped pursuing removal from

Petro, and Petro agreed to have supervised visitation with the children at the discretion of DHS.

At various times, DHS suspended Petro's visitation with the children, due to Petro's reportedly aggressive behavior, and the State filed for no-contact orders between Petro and the children multiple times.

Both children were adjudicated CINA in late December 2009.

At the request of the State, because Petro continued to exhibit belligerent and aggressive behavior, the juvenile court ordered Petro to undergo a psychological evaluation in March 2010. Visitation between Petro and the children continued at the discretion of DHS.

Approximately two weeks later, at a supervised visitation, Petro stated to the two supervising workers that "if [the mother] didn't keep her mouth shut [he was] going to take a fucking bat to her head." As a result, Petro's visitation was suspended by DHS worker Lanny Fields. Additionally, in criminal court, Petro stipulated that he had violated his probation, and the deferred judgment he originally received for the domestic abuse assault charge was revoked.

Following a May 2010 dispositional review hearing, the court made the following findings of fact:

> Father continues to struggle with cooperation with service providers. A psychological evaluation was done which contains recommendations for Mr. Petro. They include individual therapy, parenting classes, Child in the Middle, and a psychiatric referral for possible medication. Visitation has been suspended since April 4 between father and [one child] after a responsibility session between [child] and father. The sessions had to be stopped by [the child's] therapist because of father's actions. The therapist advised that further visits would not be therapeutic.

In July 2010, the court noted that Petro had still not provided DHS a signed release for his therapist, in contravention of a previous court order requiring him to do so. Additionally, DHS and the State requested "that reasonable efforts be waived based upon a lack of cooperation by [Petro], the hostile environment which [Petro] has created and [Petro's] threats to [a social worker], the DHS worker and others." The court noted that family safety, risk, and permanency (FSRP) services "have been provided by four different workers and none of them seem to have been able to work with [Petro] due to [Petro's] emotional and psychological problems." Moreover, "The father's violence toward others ha[d] not diminished." The juvenile court ultimately waived the requirement the State make reasonable efforts, finding it was not in the children's best interests to continue working toward reunification with Petro. Petro never appealed this ruling.

By the time of the termination hearing, in April 2011, Petro was convinced DHS generally—and worker Fields specifically—had actively worked toward the termination of his parental rights by consistently denying him an opportunity to visit with and engage in therapy with the children. The termination hearing lasted most of two days, and the State called only one witness—the therapist of one of the children. The therapist testified it was not in the best interests of either child to have an ongoing relationship with Petro. The rest of the hearing was dedicated to Petro's witnesses and his theory regarding why the case had proceeded to termination. Petro testified on his own behalf, stating he believed

he had done everything asked of him by DHS[1] and DHS worker Fields had wanted to terminate his parental rights from the beginning of the case. Additionally, Petro called Fields to testify. The worker was questioned about his bias against Petro, about his lack of effort expended toward reunification, and about emails with other parties or professionals involved in the case.

The juvenile court terminated Petro's parental rights to both children. In the order doing so, the court made specific findings, including:

> The father's anger has prevented a stable visitation schedule and environment. His anger has caused problems not only with his child[ren], but with all service providers and the Department.
> The father's anger is overwhelming and has caused him to rationalize the problems he has with others. [Petro] has denied assaulting his wife and has stated his actions were in self-defense. Further, [Petro] had admitted to violating his probation when he threatened to strike [the mother] in the head with a bat. [Petro] admitted his actions but then denied that he'd violated the terms of his probation at this hearing.
> The father at times on the witness stand became angry and used profanity laced language. Therapy and the [batterer's education program] has not helped this father.

Petro appealed the termination order, and a panel of our court affirmed. *See In re M.P.*, 11-0709, 2011 WL 3925418, at *2 (Iowa Ct. App. Sept. 8, 2011).

In April 2013, Petro filed his petition at law, claiming the State had intentionally inflicted emotional distress and had acted negligently in hiring and

---

[1] Upon further examination, Petro admitted that he had refused to sign a release so DHS could access the records from his therapist. Petro was reminded that the juvenile court had noted in its findings of fact for the disposition review hearing that he was in contempt of court for refusing to sign the release; in response, Petro testified, "I don't think that Court had the right to have any personal HIPPA information."

supervising its employees; his claims are based on the alleged actions of DHS during the CINA and termination proceedings.[2]

The State filed a motion for summary judgment, urging that Petro's claims fail for a number of reasons. Specifically, the State asserted Petro's claims were barred by res judicata because they were a collateral attack on the juvenile court proceedings, the State was entitled to absolute quasi-judicial immunity for following and implementing the court's orders, the claims were "inactionable in tort," the State was entitled to discretionary functional immunity pursuant to Iowa Code section 669.14(1) (2013), Petro's claim for IIED was "the functional equivalent of the torts exempted from liability in Iowa Code section 669.14(4)," and the claims were barred by the statute of limitations. Petro resisted, and a hearing was held on the matter.

In its ruling, filed in October 2015, the district court found that Petro's suit was precluded by the doctrine of res judicata. The court granted the State's motion for summary judgment and dismissed Petro's petition.

Petro appeals.

**II. Standard of Review.**

We review summary judgment rulings for correction of errors at law. *Roll v. Newhall*, ___ N.W.2d ___, ___, 2016 WL 7421325, at \*2 (Iowa 2016). We examine the record before the district court to determine whether any material fact is in dispute and, if not, whether the district court correctly applied the law. *Id.*

---

[2] Additionally, Petro originally pled a section 1983 action. Because of it, the lawsuit was removed to federal court. In October 2013, the federal court dismissed the section 1983 claim, and the IIED and negligent hiring claims were remanded back to state court.

**III. Discussion.[3]**

Petro's theory of his cause of action is that DHS worker Fields, acting as an employee of a State agency, took a number of intentional actions with the ultimate goal that Petro's parental rights would be terminated. These actions resulted in the termination of Petro's parental rights, and he has suffered severe emotional distress as a result. Additionally, because Fields was able to take such actions while working for the agency, the State was negligent in its hiring and supervision of Fields.

"[A] necessary element of a claim for negligent hiring, supervision, or retention is an underlying tort or wrongful act committed by the employee." *Kiesau v. Bantz*, 686 N.W.2d 164, 172 (Iowa 2004) (citing *Schoff v. Combined Ins. Co. of America*, 604 N.W.2d 43, 53 (Iowa 1999)), *overruled on other grounds by Alcala v. Marriott Inter., Inc.*, 880 N.W.2d 699, 708 (Iowa 2016). "Thus, an injured party must show the employee's underlying tort or wrongful act caused a compensable injury, in addition to proving the negligent hiring, supervision, or retention by the employer was a cause of those injuries." *Id.* Because Petro's claim for negligent hiring lives and dies with his claim for IIED, we consider

---

[3] We recognize that even though the district court found only one of the State's proffered justifications for granting summary judgment and dismissing Petro's claims was applicable, the State raises each of the claims anew for our consideration. We may affirm the summary judgment ruling on any ground we find applicable, so long as it was first raised to the district court. *See Duck Creek Tire Serv., Inc. v. Goodyear Corners, L.C.*, 796 N.W.2d 886, 893 (Iowa 2011) ("It is well-settled law that a prevailing party can raise an alternative ground for affirmance on appeal without filing a notice of cross-appeal, as long as the prevailing party raised the alternative ground in the district court."); *Tate v. Derifield*, 510 N.W.2d 885, 887–88 (Iowa 1994) ("On appeal we may affirm the district court ruling upon any ground raised in district court even if the ground is not one relied upon by the court.").

whether the intentional tort claim should have survived summary judgment. *See id.* ("In other words, the injured party must prove a case within a case.").

"The doctrine of res judicata embraces the concepts of claim preclusion and issue preclusion." *Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006) (citation omitted).

> The general rule of claim preclusion provides a valid and final judgment on a claim precludes a second action on that claim or any part of it. . . . Claim preclusion, as opposed to issue preclusion, may foreclose litigation of matters that have never been litigated. It does not, however, apply unless the party against whom preclusion is asserted had a "full and fair opportunity" to litigate the claim or issue in the first action. A second claim is likely to be barred by claim preclusion where the "acts complained of, and the recovery demanded are the same or where the same evidence will support both actions." A plaintiff is not entitled to a second day in court by alleging a new ground of recovery for the same wrong.

*Id.* (quoting *Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 319 (Iowa 2002)).

In order to establish claim preclusion, here, the State has the burden to prove: (1) the parties in the first and second action are the same parties or parties in privity, (2) there was a final judgment on the merits in the first action, and (3) the claim in the second suit could have been fully and fairly adjudicated in the prior case (i.e., both suits involve the same cause of action). *Pavone v. Kirke*, 807 N.W.2d 828, 836 (Iowa 2011).

Petro maintains the parties are not the same here as they were in the prior case. We disagree. While Petro limits his analysis to the CINA adjudication, we note that he has conceded that his cause of action did not accrue until the

completion of the termination action.[4] Petro was, by statute, a necessary party to the termination action, and he was in fact a named party. *See* Iowa Code §§ 232.112(1) (stating "[p]ersons listed in section 232.111, subsection 4, shall be necessary parties to a termination of a parent-child relationship proceeding"); 232.111(4) (listing the "living parents of the child"). Additionally, though the county attorney filed the petition to terminate Petro's parental rights and tried the case, the county attorney was acting on behalf of the State in doing so. *See* Iowa Code § 232.114(2) ("Upon the filing of a petition the county attorney shall represent the [S]tate in all adversary proceedings arising under this division and shall present evidence in support of the petition.").

In his appellate brief, Petro stipulates that there was final judgment on the merits of the first action.[5]

Last, we "determine whether the claim in the second suit could have been fully and fairly adjudicated in the prior case, that is, whether both suits involve the same cause of action." *Pavone*, 807 N.W.2d at 837. In doing so, we "must examine: (1) the protected right, (2) the alleged wrong, and (3) the relevant evidence." *Id.* In the first case—the underlying CINA and termination actions—the protected right at issue was Petro's right to parent his children. Here, the protected right at issue is Petro's right to be free from the allegedly intentionally tortious conduct of the worker. While the two appear different at first glance, in

---

[4] In his brief to the district court, Petro stated his "damages were not defined until [his] rights were terminated and not ripe up until the Court of Appeals denied his request."
[5] After stipulating, he goes on to argue that the "final judgment" is different in a juvenile court action focused on the best interests of the children as compared to a tort claim asking for monetary damages, but we believe this argument is actually in response to the third prong of the test, and we will address it as such.

this case, the two are so intertwined as to be inseparable. As the district court noted, "Petro's claims and damages [here] arise *solely* from the ultimate termination of his parental rights . . . . But for the action by the juvenile court, Petro would have no cause of action." In other words his loss in the first case is the basis for the cause of action in the present case; if the district court found his argument persuasive the first time, Petro's rights would not have been terminated, and the harm he now claims he suffered would not have occurred. Additionally, the alleged wrong, while characterized differently in the two cases, is ultimately the same. During the termination hearing, Petro maintained the children could be safely returned to his care and that it was only the misrepresentations and deceit on the part of the DHS worker that made it seem otherwise. Here, he claims that his parental rights were wrongly terminated due to the misrepresentations and deceit on the part of the DHS worker, and that such action constituted the intentional inflection of emotional distress. The relevant evidence is the same.

Petro maintains that because the remedies in the two cases are different—that one involved the return of his children and this is for money damages—the claims cannot be the same. However, "[a] plaintiff is not entitled to a second day in court by alleging a new ground of recovery for the same wrong." *Spiker*, 708 N.W.2d at 353 (citation omitted). Even though he asks for a different remedy, Petro is ultimately asking us to determine the juvenile court was wrong; at the termination hearing, Petro had already developed the theory that it was the bad acts of the DHS worker that was preventing the return of his children rather than his own challenges to parent the children safely, and he spent

approximately two days at trial developing this theory for the juvenile court. However, the juvenile court was not convinced. Regardless, Petro now wants us to determine it was the "outrageous conduct" of the DHS worker that cost him his right to parent and, consequently, caused him to suffer severe emotional distress. *See Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 118 (Iowa 1984) (defining the elements of IIED). Petro may not now relitigate the facts of the underlying termination proceeding. *See Robbins v. Dist. Ct.*, 592 F.2d 1015, 1018 (8th Cir. 1979) ("[Plaintiffs] resisted termination of their parental rights in the Iowa state courts and presently complain that their civil rights were violated by the termination. It is equally apparent that the causes of action in each proceeding are the same. Appellants argued in state court as they do here that their parental rights were unjustly and unconstitutionally terminated. Thus their . . . action is based on the same nucleus of operative fact before the Iowa courts. Appellants . . . cannot now attempt to circumvent the doctrine of claim preclusion by merely alleging a different theory of recovery where the actions arise out of the same transaction.").

Additionally, Petro argues he should be able to maintain this action because it was filed in district court, which has different rules and responsibilities than the juvenile court. The district court was not persuaded by Petro's argument, analogizing the *Rooker-Feldman* doctrine, which bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting [federal] district court review and rejection of those judgments," to the present situation. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

(2005) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). We agree. Petro is attempting to use his suit in the district court to relitigate his loss before the juvenile court, but he is not allowed another bite at the apple.

Finally, Petro maintains that res judicata cannot bar his claim because the rules of res judicata must be suspended due to fraud. He cites *Bradley v. Board of Trustees of Washington Township, Dubuque City.*, 425 N.W.2d 424 (Iowa Ct. App. 1988), in support of his claim. Petro's argument fails to appreciate the requirement that the fraud be "extrinsic" and "supported by clear, unequivocal, and convincing evidence and, at the very least, require a showing of fault, willfulness, or bad faith." *Bradley*, 425 N.W.2d at 425. "Extrinsic fraud is some act or conduct of the prevailing party which has prevented a fair submission of the controversy." *Id.* at 426. Additionally, "[a] fraudulent concealment of facts which would have caused the judgment not to have been rendered will constitute extrinsic fraud." *Id.* at 425. Here, Petro claims worker Fields "lied to the juvenile court, overlooked and covered-up ongoing physical abuse of the children by their mother, and then testified on their behalf in the dissolution proceedings, deliberately created an atmosphere in which Petro's children feared him, and falsified correspondence to solicit false documents against Petro." These claims involve *intrinsic* fraud, and for that reason, they necessarily fail. *See Phipps v. Winneshiek Cty.*, 593 N.W.2d 143, 146 (Iowa 1999) ("Although extrinsic fraud can be a ground to vacate a judgment, intrinsic fraud cannot. . . . A claim of false testimony constitutes intrinsic fraud. . . ." (citations omitted)). As the district court noted in its ruling on Petro's motion to reconsider, "Petro was not only aware of

the 'fraud' he again seeks to assert, he actually argued the fraud in the context of the juvenile court proceeding." Petro continues to assert that DHS worker Fields's actions made it impossible for the juvenile court to "fully and fairly adjudicate" the underlying termination action, but Petro was able to present evidence to support these claims of Fields's alleged misdeeds and he was able to examine Fields at length before the juvenile court. Thus, even if Petro is correct in assertions about Fields's action, "[t]he collateral attack on a judgment procured by intrinsic fraud is not permitted because the parties had an opportunity at trial to expose the fraud to the trier of fact." *Id.*

Because we agree with the district court that the doctrine of res judicata bars Petro's claims for IIED and negligent hiring and supervising, we affirm the district court's grant of summary judgment and dismissal of the claims. We affirm.[6]

**AFFIRMED.**

---

[6] We note that Petro mentions, "This is an equal protection issue." Petro makes no argument and offers no authority to support this passing statement. This is not enough to properly raise an equal-protection claim. *See Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) ("[Litigant's] random mention of this issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration.").